UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| E.R., a minor, by and through his Guardian ad Litem, CAROLYN YOUNG,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>SUTTER DAVIS HOSPITAL, SUTTER WEST WOMEN'S HEALTH, SUSAN MAAYAH, M.D., and DOES 1 through 100, inclusive,<br><br>　　　　Defendants, | CIV. NO. 2:14-2053 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| AND RELATED THIRD-PARTY CLAIMS. | |

----oo0oo----

　　　　The case before the court is the second in a series of actions based on alleged medical malpractice that occurred when Jennifer Lara gave birth via caesarian section to her minor son, plaintiff E.R.  The United States now moves pursuant to Federal Rule of Civil Procedure 12(b)(1) to dismiss defendant Sutter

Davis Hospital's ("Sutter Davis") third-party complaint for lack of subject matter jurisdiction.

I.   Factual and Procedural Background

E.R. was born on February 3, 2010 at Sutter Davis and defendant Dr. Susan Maayah performed the cesarean section. (Compl. ¶ 7.)  Lara allegedly received inadequate prenatal care from defendant Sutter West Women's Health. (Id. ¶ 14.)  E.R. ultimately suffered perinatal anoxia and brain damage as a result of allegedly inadequate monitoring of his fetal heart rate during labor and delivery and the failure to timely perform an emergency cesarean section. (Id.)  According to Sutter Davis, Lara also received prenatal care from Salud Clinic, and certified nurse midwives Amelia Bauermann and Tamara Johnson monitored her labor and delivery. (Sutter Davis's Opp'n at 3:12-18.)

Lara initiated a medical malpractice action in California Superior Court against Sutter Davis Hospital, Salud Clinic, Sutter West Women's Health, Dr. Maayah, and Bauermann. Sutter Davis then filed a cross-complaint for indemnity and/or contribution against Salud Clinic, Bauermann, and Johnson. (Civ. No. 2:12-2407 WBS CKD, Docket No. 14-1.)  Lara then dismissed her claims against Salud Clinic and Bauermann with prejudice. (Civ. No. 2:12-2407 WBS CKD, Docket Nos. 14-1 at Ex. A, 51 at 2, n.1.) On September 20, 2012, the United States removed the case to federal court and substituted as cross-defendant in place of Salud Clinic, Bauermann, and Johnson under the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 233(c) ("§ 233(c)"). (Civ. No. 2:12-2407 WBS CKD, Docket Nos. 1, 2.)  In doing so, the United States certified under § 233(c) that Salud

Clinic and the midwives were "deemed employees of the Public Health Service" and "were acting within the scope of such employment at the time of the incident out of which this suit arose." (Civ. No. 2:12-2407 WBS CKD, Docket No. 1-5.)

Eight months after the deadline set by this court to join new parties had expired, Lara sought leave to amend her complaint to add her son, E.R., as a plaintiff. Although the court found that Lara did not exercise diligence in seeking amendment, it nonetheless granted Lara leave to join E.R. because denying her motion to amend would conflict with Rule 1 of the Federal Rules of Civil Procedure and "the court's independent obligation to efficiently manage its calendar." Lara v. Sutter Davis Hosp., Civ. No. 2:12-2407 WBS CKD, 2014 WL 28817, at *3 (E.D. Cal. Jan. 2, 2014). Recognizing that defendants were justified in opposing Lara's motion to amend, the court conditioned Lara's joinder of E.R. on her reimbursing defendants for the attorney's fees and costs incurred in opposing her motion to amend. Id. at *4.

Instead of joining E.R. as a plaintiff in that action, however, the parties entered a private settlement and agreed to waive all fees and costs, including the fees and costs the court imposed as a condition of granting Lara leave to amend. On February 28, 2014, Lara voluntarily dismissed her claims against Sutter Davis, Sutter West, and Dr. Maayah without prejudice, and Sutter Davis voluntarily dismissed its claims against the United States with prejudice. (Civ. No. 2:12-2407 WBS CKD, Docket No. 51.)

About two months later, plaintiff E.R. initiated a

3

medical malpractice action in California Superior Court against Sutter Davis, Sutter West Women's Health, and Dr. Maayah. (Docket No. 1-1.) Sutter Davis subsequently filed a third-party complaint[1] for indemnity and/or contribution against Salud Clinic, Bauermann, and Johnson. (Docket No. 1-2.) The United States then substituted as third-party defendant in place of Salud Clinic, and the midwives under the Federally Supported Health Centers Assistance Act, § 233(c), and removed the case to this court. (Docket No. 1.) In addition to attaching the § 233(c) scope of employment certification it had issued in Lara's case, the United States issued a new certification under § 233(c) establishing that Salud Clinic and the midwives were "deemed employees of the Public Health Service" and "were acting within the scope of such employment at the time of the incident out of which this suit arose." (Docket No. 1-5.) The United States alternatively sought removal under 28 U.S.C. § 1442(a)(1) ("§ 1442(a)(1)"), indicating that, because of the § 233(c) certification it had filed in Lara's case, the third-party complaint against Salud Clinic, Bauermann, and Johnson was in fact against the United States. (Notice of Removal ¶ 7 (Docket No. 1).)

---

[1] Although Sutter Davis labels and the parties refer to its claims against Salud Clinic, Bauermann, and Johnson as crossclaims, E.R. did not name Salud Clinic, Bauermann, and Johnson as defendants and thus they were not coparties subject to crossclaims under Rule 13(g). See Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence . . . ."). Sutter Davis's complaint against Salud Clinic, Bauermann, and Johnson is a third-party complaint under Rule 14(a)(1).

       Relying on the derivative jurisdiction doctrine, the United States now moves to dismiss Sutter Davis's third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.  Minor plaintiff E.R. joins the United States' motion.

## II. Analysis

       On a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing a jurisdictional basis for his action.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Because "[f]ederal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute," id., a court must dismiss an action over which it has no jurisdiction.  Fed. R. Civ. P. 12(h)(3).

       The Federally Supported Health Centers Assistance Act provides that a "public or non-profit private entity receiving Federal funds" shall be "deemed to be an employee of the Public Health Service" and that the exclusive remedy for personal injury against that entity or its employees is a claim under the Federal Tort Claims Act ("FTCA").  42 U.S.C. § 233(a), (g)(1)(A), (g)(4).  Pursuant to § 233, if an entity is deemed an employee of the Public Health Service and the Attorney General certifies that the entity or its employee was "acting in the scope of his employment at the time of the incident out of which the suit arose," the action "shall be removed without bond at any time before trial by the Attorney General to the district court . . . and the proceeding deemed a tort action brought against the United States . . . ."  Id.  Subsection 1442(a)(1) provides for removal of any action against "[t]he United States or any agency thereof or any

officer (or any person acting under that officer) of the United States . . . ."  28 U.S.C. § 1442(a)(1).

"The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction."  Lambert Run Coal Co. v. Baltimore & O.R. Co., 258 U.S. 377, 382 (1992).  Under the derivative jurisdiction doctrine, "[i]f the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction."  Id.  "Derivative jurisdiction thus requires a federal court to dismiss for lack of subject matter jurisdiction if it determines that the state court, prior to removal, lacked jurisdiction."  Nye v. Hilo Med. Ctr., Civ. No. 09-00220 JMS/KSC, 2010 WL 931926, at *3 (D. Haw. Mar. 11, 2010).

Congress, however, has limited the application of the derivative jurisdiction doctrine.  In 1986, it "abolishe[d]" the doctrine with enactment of 28 U.S.C. § 1441(e).  Ethridge v. Harbor House Rest., 861 F.2d 1389, 1392 n.3 (9th Cir. 1988); see 28 U.S.C. § 1441(e) (1986) ("The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim.").  While the Ninth Circuit indicated that § 1441(e) "became effective with respect to all civil actions commenced in state courts on or after June 19, 1986," Ethridge, 861 F.2d at 1392 n.3, other circuits "disagreed about whether Congress intended the abrogation of the derivative jurisdiction doctrine to extend to removals under other provisions, such as 28 U.S.C. §

6

1442." Lopez v. Sentrillon Corp., 749 F.3d 347, 350 (5th Cir. 2014). Sixteen years later, Congress limited the scope of its statutory ban of derivative jurisdiction by replacing § 1441(e) with a new § 1441(f), which provides, "The court to which a civil action is removed <u>under this section</u> is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."  28 U.S.C. § 1441(f) (emphasis added).

After Congress enacted the limiting language in § 1441(f), courts routinely apply the derivative jurisdiction doctrine to cases removed under § 1442.  See, e.g., Lopez, 749 F.3d at 350 ("[A]ny ambiguity about the endurance of the derivative jurisdiction doctrine as applied to removals under § 1442 was eliminated when Congress amended § 1441 in 2002 to add the words 'removed under this section.'"); Palmer v. City Nat'l Bank, of W. Va., 498 F.3d 236, 246 (4th Cir. 2007) ("Whatever the intent of the 2002 amendment, its result was that § 1441(f) is more clear than former § 1441(e) in abrogating derivative jurisdiction only with respect to removals effectuated under § 1441."); Glass v. Nat'l R.R. Passenger Corp., 570 F. Supp. 2d 1180, 1183 (C.D. Cal. 2008).

Application of the derivative jurisdiction doctrine to cases removed pursuant to § 233(c) or the analogous removal provision of the Westfall Act, 28 U.S.C. § 2679(d)(2) ("§ 2679(d)(1)")[2] is more questionable.  Subsection 233(c)

---

[2]  Because the exclusive FTCA remedy and procedure for scope of employment certification and removal in § 233(c) and § 2679(d)(2) are substantively similar, the court discusses cases

unequivocally provides that, upon certification under that section, the action "shall be removed . . . to the district court . . . and the proceeding deemed a tort action brought against the United States . . . ."  42 U.S.C. § 233(c).  Applying the derivative jurisdiction doctrine to cases removed under § 233(c) "would render this provision nonsensical if all actions so removed were dismissed for lack of subject matter jurisdiction."  Nye, 2010 WL 931926, at *5; accord Anselmo v. Mull, Civ. No. 2:12-1422 WBS EFB, 2012 WL 3233274, at *2 (E.D. Cal. Aug. 6, 2012) ("The position taken by the United States Attorney is inconsistent with whole purpose and history of the Westfall Act. . . . If every action removed pursuant to § 1442(a) and § 2697(d)(2) were subject to dismissal because it was not properly brought in the state court, no case removed under the Westfall Act could ever survive in federal court.  That clearly was not what Congress intended in passing the Act." (internal citations omitted)).

        Recognizing that "Congress anticipated that suits [subject to removal under § 2679(d)(2)] initially would be brought in state court," the Third Circuit has held that "federal jurisdiction lies only after the Attorney General certifies that the federal [employee] was acting within the scope of his employment."  Thompson v. Wheeler, 898 F.2d 406, 409 n.2 (3d Cir. 1990); accord Stokley v. United States, No. 10-CV-01383-LTB-MEH, 2011 WL 1043344, at *3 (D. Colo. Mar. 17, 2011).  The Third

---

addressing § 2679(d)(2) in this Order.  See, e.g., Nye, 2010 WL 931926, at *4 & n.2 (noting the similarities between the wording and removal of FTCA claims in § 233(c) and § 2679(d)(2) and the persuasiveness of a decision interpreting § 2679(d)(2) when analyzing § 233(c)).

Circuit further explained that the "possibility that such certification might issue does not automatically divest a state court of subject matter jurisdiction." Thompson, 898 F.2d at 409 n.2. In applying these principles, the Thompson court concluded that the state court was not divested of jurisdiction even though the defendant was treated as a federal employee under the Westfall Act in a prior case by a different plaintiff based on the same accident. Id. at 409 n.2.

Here, the United States sought removal under § 233(c) and § 1442(a)(1).[3] In arguing that the derivative jurisdiction doctrine mandates dismissal under § 233(c) and § 1442(a)(1), the government relies on the scope of employment certification issued in Lara's case. Assuming that the derivative jurisdiction doctrine applies, the state court lacked jurisdiction over Sutter Davis's third-party complaint only if the § 233(c) scope of employment certification issued in Lara's case had legal significance in E.R.'s subsequent case. According to the United States, Barnaby v. Quintos, 410 F. Supp. 2d 142 (S.D.N.Y. 2005)

---

[3] The court questions, but need not resolve, the propriety of removal of the instant case under § 1442(a)(1). Absent an operative scope of employment certification under § 233(c), the United States does not suggest that removal would have been possible under § 1442(a)(1). Because reliance on the § 233(c) scope of employment certification was necessary to seek removal, it would seem that removal would be proper only under § 233(c). Accord Nye, 2010 WL 931926, at *3 ("[T]he actions of Hilo Bay Clinic and its employees were precisely within the removal jurisdiction of § 233. In fact, but for § 233 and Hilo Bay Clinic's designation as a federal entity under that law, Hilo Bay Clinic could not have removed the action to this court. Given that § 233 specifically applied to this action, removal under the more general § 1442 was improper." (citing Gozlon-Peretz v. United States, 498 U.S. 395, 396 (1991) (noting that "a specific [statutory] provision controls one of a more general application"))).

1  and A.Q.C. ex rel. Castillo v. Bronx-Lebanon Hosp., Civ. No. 11-
2  2656(NRB), 2012 WL 170902 (S.D.N.Y. Jan. 20, 2012), show that the
3  § 233(c) scope of employment certification from Lara's case was
4  controlling in E.R.'s case.

5        In Barnaby, the patient plaintiff brought a medical
6  malpractice claim in state court against a physician and the
7  Mount Vernon Neighborhood Health Center (collectively, "clinic
8  defendants") and a physician, lab employee, and Universal
9  Diagnostic Laboratories, Inc. (collectively, "lab defendants").
10 The clinic defendants removed the action to federal court under §
11 1442(a)(1), § 2679(d)(2), and § 233(c).  Barnaby, 410 F. Supp. 2d
12 at 142-44.  The United States subsequently substituted for the
13 clinic defendants after certifying that they were federal
14 employees acting in the scope of their employment.  Id. at 143.
15 The district court dismissed the claims against the United States
16 for failure to comply with the FTCA and remanded the claims
17 against the lab defendants to state court.  Id.

18       Once the case was back in state court, the lab
19 defendants filed a third-party complaint against the clinic
20 defendants.  Id.  The clinic defendants again removed the case to
21 federal court under § 1442(a)(1), § 2679(d)(2), and § 233(c) and
22 sought dismissal based on the derivative jurisdiction doctrine.
23 Id.  The Southern District of New York held that the derivative
24 jurisdiction doctrine applied and mandated dismissal of the
25 third-party complaint against the clinic defendants.  Id. at 145-
26 47.  The court distinguished Thompson on the ground that the
27 Attorney General had already certified that the clinic defendants
28 were acting in the scope of their employment when the clinic

10

defendants first removed the case to federal court. Id. at 147. Unlike in Thompson, where the certification "was in a separate lawsuit that had been settled," the Barnaby court emphasized that "the chain of the litigation [wa]s unbroken." Id. at 147 n.9.[4]

In A.Q.C., a minor plaintiff brought suit in state court alleging medical negligence in her mother's prenatal care and her delivery against her mother's obstetrician, Dr. Paquita Castillo, and Bronx-Lebanon Hospital Center. 2012 WL 170902, at *1. After the Attorney General certified that Dr. Castillo was an employee of the United States and acting within the scope of her employment, Dr. Castillo removed the action to federal court pursuant to § 233(c) and § 2679(d)(2). Id. The federal court dismissed plaintiff's claim against Dr. Castillo for failure to timely file an administrative complaint as required by the FTCA and dismissed plaintiff's claim against Bronx-Lebanon without prejudice to plaintiff refiling it in state court. Id.

Plaintiff filed a new action against Bronx-Lebanon in state court,[5] alleging the same claims as she had in the first

---

[4] The Barnaby court also noted that "Thompson was a case where the notice of removal was not based on Section 2679(d)." Id. at 146-47. Although it is true that the notice of removal in Thompson relied on § 1442(a)(1), the Third Circuit questioned the viability of removal under § 1442(a)(1) and amended the potentially "defective allegation of jurisdiction" under 28 U.S.C. § 1653 in order to "treat[] the petition for removal as including section 2679(d) as a basis for district court jurisdiction." Thompson, 898 F.2d. at 410. Thompson thus cannot be distinguished as having been removed under § 1442(a)(1).

[5] The A.Q.C. court noted that the dismissal of the first case and subsequent re-filing in state court did not result in a "meaningful difference" from the remand of the action in Barnaby. Id. at *5 n.3.

case. Id. at *2. Bronx-Lebanon then filed a third-party complaint against Dr. Castillo for indemnification and contribution. Id. The Attorney General again certified that Dr. Castillo was a United States employee acting within the scope of her employment and removed the action to federal court under § 1442(a)(1), § 233(c), and § 2679(d)(2). Id. The district court recognized that application of the derivative jurisdiction doctrine as to removal under § 233(c) and § 2679(d)(2) was questionable, but held that the doctrine governed the case and therefore mandated dismissal because the case was also removed under § 1442(a)(1).[6] Id. at *4-5.

Assuming that the Barnaby and A.C.Q. courts are correct in relying on a prior employment certification to determine the propriety of a subsequent removal, those cases are distinguishable from the case at hand. In Barnaby and A.C.Q., the employment certifications at issue involved the same claims by the same plaintiffs for the same conduct by the same federal employee defendants. Here, however, the first employment certification for Salud Clinic and the midwives was issued with respect to the alleged malpractice claims Lara asserted. In the case at hand, Lara is no longer a plaintiff and E.R. asserts his own claims for alleged malpractice. The United States has not

---

[6] In determining that Dr. Castillo was an officer of the United States as required for removal under § 1442(a)(1), the district court appears to have relied exclusively on the Attorney General's certification under § 233(c) and § 2679(d)(2) from the first case. See id. at *5. As previously mentioned, the court questions the appropriateness of assessing removal under § 1442(a)(1) when it is dependent on a certification issued under a separate, more specific removal statute.

cited any authority holding that an employment certification under § 233(c) issued as to conduct in one case is controlling in a subsequent related case by a different plaintiff.

Moreover, Sutter Davis dismissed its claims against the United States in Lara's case with prejudice, and the United States does not suggest that the dismissal of those claims has any effect on Sutter Davis's third-party claims in E.R.'s case. Unlike in Barnaby and A.C.Q., Lara's litigation concluded. The United States has not cited any authority establishing that the legal significance of the scope of employment certification issued in Lara's case survived the dismissal with prejudice of the claims giving rise to the certification.

The procedural history of this case is more similar to Thompson than Barnaby and A.C.Q. In Thompson, a Deputy United States Marshal (the "deputy") was involved in a vehicle accident with Daphne Wheeler when the deputy was transporting a federal prisoner. Thompson, 898 F.2d at 407. Wheeler brought suit against the deputy in federal court and "the action was defended by the United States Attorney as it was effectively against the United States" under the Westfall Act. Id. After Wheeler's case concluded, the prisoner brought an action in state court against Wheeler and Wheeler filed a third-party complaint against the deputy. Id. The deputy removed the case to federal court, and the Third Circuit treated it as removed under § 2679(d)(2). Id. at 407-08, 410. Despite the deputy having been treated as a federal employee in the first action by Wheeler, the Third Circuit did not treat the deputy as a federal employee for the purposes of the second action by the prisoner until issuance of

13

the employment certification in that action.  Id. at 409 n.2.

          The court is also not persuaded that the prior certification in Lara's case somehow gained legal significance because the connection between Salud Clinic's and the midwives' treatment of Lara and E.R. made it highly probable that the United States would issue an employment certification in E.R.'s case.  While it may be easy to conflate Lara's and E.R.'s claims because they relate to Lara's prenatal care and the delivery of E.R., it is hard to imagine how the certification in the second case in Thompson was any less of a certainty than certification in E.R.'s case.  In Thompson, the deputy was driving the vehicle carrying the prisoner (the plaintiff in the second case) at the time of the accident between the deputy and Wheeler (the plaintiff in the first case).  Despite the inescapable factual connection between the two actions, the Third Circuit recognized that the employment certification in the second case was only a "possibility" and concluded that the mere possibility could not divest the state court of jurisdiction.  Id.

          Albeit in dicta, some cases could be read as suggesting that the court should assess whether the state court had jurisdiction in light of how probable it was that the Attorney General would issue a scope of employment certification, A.Q.C., 2012 WL 170902, at *5, or whether the plaintiff "had a reasonable basis to question" whether the state court had jurisdiction, Stokley, 2011 WL 1043344, at *3.  Such case-by-case inquiries are not grounded in the text of the removal statutes.

          Absent a statute or binding precedent establishing that an employment certification under § 233(c) is controlling for all

subsequent cases arising from the same or related conduct by the federal employee, the court will not extend the effect of an employment certification beyond the claims for which it was issued.  At the time Sutter Davis filed its third-party complaint, Salud Clinic and the midwives had not been certified under § 233(c) as employees of the Public Health Service acting within the scope of such employment with respect to E.R.'s claims, and the state court had jurisdiction over Sutter Davis's third-party claims.  Accordingly, even assuming the derivative jurisdiction doctrine applies to cases removed under § 233(c) or that the United States could properly remove this case under § 1442(a)(1), the derivative jurisdiction doctrine does not mandate dismissal.  The court must therefore deny the United States' motion to dismiss for lack of subject matter jurisdiction.

With the exception of delay and added expense to the parties, the court notes that this result is precisely what would have occurred if Lara had added E.R. as a plaintiff in the first action as she originally sought leave to do.  Under the FTCA, third-party complaints, crossclaims, and counterclaims are exempt from the FTCA administrative exhaustion requirements.  See 28 U.S.C. § 2675(a).  If the court dismissed this action under the derivative jurisdiction doctrine, Sutter Davis's only remedy would be to file a direct action against the United States in federal court for indemnity or contribution, which would be subject to the FTCA administrative exhaustion requirements. Although maintaining jurisdiction over this case may appear to give Sutter Davis some advantage, Sutter Davis would have been exempt from the administrative exhaustion requirements in Lara's

action if it had filed the same claims against Salud Clinic and the midwives after Lara joined E.R. as a plaintiff.

IT IS THEREFORE ORDERED that the United States' motion to dismiss for lack of subject matter jurisdiction be, and the same hereby is, DENIED.

Dated:   December 15, 2014

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE