UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| E.R., a minor, by and through his Guardian ad Litem, CAROLYN YOUNG, <br><br> Plaintiff, <br><br> v. <br><br> SUTTER DAVIS HOSPITAL; SUTTER WEST WOMEN'S HEALTH; SUSAN MAAYAH, M.D.; <br><br> Defendants. | CIV. NO. 2:14-2053 WBS CKD <br><br> MEMORANDUM AND ORDER RE: MOTION FOR SUMMARY JUDGMENT |
| AND RELATED THIRD-PARTY CLAIMS. | |

----oo0oo----

Plaintiff E.R., by and through his Guardian ad Litem, Carolyn Young, brought this action, alleging defendants Sutter Davis Hospital ("Sutter Davis"), Sutter West Women's Health, and Dr. Susan Maayah were negligent during E.R.'s birth. (Docket No. 1-1.) Sutter Davis brought third-party claims against the United States for indemnification and contribution. (Docket No. 1-2.)

1

The United States now moves for summary judgment against Sutter Davis pursuant to Federal Rule of Civil Procedure 56 on Sutter Davis's third-party claims.

I.   Factual and Procedural History

E.R. was born at Sutter Davis in February 2010. Jennifer Lara, E.R.'s mother, arrived at Sutter Davis Labor and Delivery early in the morning and the individuals supervising her care ordered intermittent fetal monitoring. Lara suffered from an amniotic fluid embolism and the fetus's heart rate suddenly dropped around 10:42 p.m., requiring Dr. Maayah to deliver E.R. through an emergency Caesarean section. The amniotic fluid embolism interfered with E.R.'s oxygen supply and resulted in brain injuries. E.R. filed suit against defendants for medical malpractice in California Superior Court.

Sutter Davis filed a third-party complaint in California Superior Court against the United States, alleging the federally funded midwives caring for Lara during labor and delivery were negligent and caused some or all of E.R.'s injuries. (Cross-Compl. at 3-4 (Docket No. 1-2).) The United States removed this case to federal court. (Docket No. 1.) The United States served interrogatories on Sutter Davis to determine the basis for its third-party claims and Sutter Davis responded that each request sought premature disclosure of expert witness information and that it reserved the right to supplement its response. (Broderick Decl. Ex. A (Docket No. 37-3).) Sutter Davis never amended these responses and never disclosed experts that opined the midwives breached a duty of care or caused E.R.'s injuries. (Id. ¶¶ 2-3, Exs. B-C.) The United States now moves

for summary judgment, arguing Sutter Davis cannot prove the federally funded midwives breached the standard of care and proximately caused E.R.'s injuries. (Cross Def.'s Mot. 2:10-12 (Docket No. 37-1).)

II. <u>Discussion</u>

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). Alternatively, the movant can demonstrate that the non-moving party cannot produce evidence to support an essential element upon which it will bear the burden of proof at trial. <u>Id.</u>

Once the moving party meets its initial burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" <u>Id.</u> at 324 (quoting then-Fed. R. Civ. P. 56(e)). The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient;

3

there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. Id. at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." Id.

Sutter Davis argues the United States should be responsible for E.R.'s injuries since the federally funded midwives were Lara's primary providers and caretakers during labor. (Def.'s Opp'n 6:21-26 (Docket No. 40).) The Federal Tort Claims Act ("FTCA") waives the government's immunity for tort claims arising out of the negligent conduct of government employees acting within the scope of their employment. Terbush v. United States, 516 F.3d 1125, 1128 (9th Cir. 2008). A suit brought against the United States under the FTCA "is to be determined in accordance with the law of the place where the [allegedly tortious] act or omission occurred." Tekle v. United States, 511 F.3d 839, 844 (9th Cir. 2006) (alteration in original) (citations omitted). The events occurred in California, so California law applies. Id.

California law states that "there can be no indemnity without liability" and thus Sutter Davis must show the midwives were liable for E.R.'s injuries. See Bostick v. Flex Equip. Co., Inc., 147 Cal. App. 4th 80, 130 (2d Dist. 2007) (quoting Munoz v. Davis, 141 Cal. App. 3d 420, 425 (2d Dist. 1983)). The elements

4

for professional negligence in California are: "(1) the duty of the professional to use such skill, prudence, and diligence that other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligence conduct and resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Paul v. Patton, 235 Cal. App. 4th 1088, 1095 (6th Dist. 2015).

"Whenever the plaintiff claims negligence in the medical context, the plaintiff must present evidence from an expert that the defendant breached his or her duty to the plaintiff and that the breach caused the injury to the plaintiff." Powell v. Kleinman, 151 Cal. App. 4th 112, 123 (5th Dist. 2007). "[W]here the conduct required of a medical professional is not within the common knowledge of laymen, a plaintiff must present expert witness testimony to prove a breach of the standard of care." Bushling v. Fremont Med. Ctr., 117 Cal. App. 4th 493, 509 (3d Dist. 2004) (citations omitted). "Plaintiff also must show that defendants' breach of the standard of care was the cause, within a reasonable medical probability, of his injury." Id. "When a defendant moves for summary judgment and supports his motion with expert declarations that his conduct fell within the community standard of care, he is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence." Powell, 151 Cal. App. 4th at 123 (quoting Munro v. Regents of Univ. of Cal., 215 Cal. App. 3d 977, 985 (2d Dist. 1989)).

Sutter Davis's expert witness, Michael Benson, stated

1 in his rebuttal report that "[m]idwife care [is] totally moot"
2 and "[a]s the midwives consulted regularly with the physicians,
3 the fact that they participated in the care of Ms. Lara had
4 nothing to do with the injury of [E.R.]" (Broderick Decl. Ex. D
5 ("Benson Report"), at 6 (Docket No. 37-3).) According to Benson,
6 "no act of omission or commission by the midwife [or nurses]
7 would have made any difference" to E.R.'s injuries. (Id.)
8 Benson affirmed this in his deposition, where he stated that he
9 held all of the opinions expressed in his original and rebuttal
10 reports to a reasonable degree of medical certainty. (Benson
11 Dep. 148:21-149:15 (Docket No. 37-3).) The United States has
12 thus presented evidence, through Sutter Davis's own expert, that
13 the midwives' conduct fell within the standard of care and their
14 conduct did not cause E.R.'s injuries.
15          The United States argues Sutter Davis is unable to
16 rebut this evidence because Sutter Davis never disclosed or
17 provided any conflicting expert testimony or reports. (Broderick
18 Decl. ¶¶ 3-4, Exs. B-C); see Robinson v. Kaweah Delta Hosp., Civ.
19 No. 1:09-1403 LJO GSA, 2010 WL 4624090, at *6 (E.D. Cal. Nov. 5,
20 2010) ("A party failing to satisfy expert disclosure requirements
21 'is not allowed to use that information or witness to supply
22 evidence . . . at trial unless the failure was substantially
23 justified or is harmless.'" (quoting Fed. R. Civ. P. 37(c)(1))).
24          Sutter Davis concedes it did not disclose any experts
25 that establish the midwives breached the standard of care and
26 caused E.R.'s injuries, but it instead argues there are other
27 experts that establish the midwives' liability. Sutter Davis
28 relies on two experts disclosed by plaintiff --Dr. Barry Schifrin

and Dr. Charles Ballard--to prove the midwives breached the applicable standard of care and caused E.R.'s injury.  While it was not Sutter Davis who disclosed these experts, Federal Rule of Civil Procedure 56 allows a party to rely upon "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  Assuming it is fair to permit Sutter Davis to rely on plaintiff's experts even though plaintiff has no claim against the United States, see House v. Combined Insurance Co. of America, 168 F.R.D. 236, 240-46 (N.D. Iowa 1996) (summarizing case law regarding when a party can rely upon an opposing party's expert to prove its claim), the United States argues there is no expert causation evidence.[1]

Throughout its supplemental brief on causation, Sutter

---

[1] Although it does not form the basis for the court's decision on this motion, there is serious doubt that Sutter Davis has met its burden of proving the experts are qualified. See United States v. 87.98 Acres of Land More or Less in the County of Merced, 530 F.3d 899, 904 (9th Cir. 2008).  While both experts are doctors, this does not mean they are qualified to speak to the standard of care of nurse midwives.  See Diviero v. Uniroyal Goodrich Tire Co., 919 F. Supp. 1353, 1357-58 (D. Ariz. 1996) ("Expertise in the technology of fruit is not sufficient when analyzing the science of apples.  Courts have excluded the testimony of engineers because their expertise was not particular to the science involved in the case.").  Dr. Schifrin last managed a delivery involving a midwife in 1975.  (Schifrin Dep. 27:1-7 (Docket No. 42-1).)  Dr. Schifrin cannot recall the last time he reviewed the scope of practice for a certified nurse midwife and has not reviewed the Sutter Davis midwife practice guidelines.  (Id. 27:12-20, 135:22-136:3, 140:14-24.)  There is no evidence that Dr. Ballard has ever managed a labor and delivery involving a midwife.  (Ballard Dep. 38:17-39:4, 41:16-19 ("Is it accurate to say you have no independent memory of managing a labor and delivery with a nurse midwife ever?  A: I think that may be an accurate statement, yes.").)  Dr. Ballard has also never reviewed the Sutter Davis midwife practice guidelines.  (Id. 100:3-5.)

7

Davis repeats the same conclusory causation statements in Dr. Ballard's and Dr. Schifrin's reports.  Dr. Schifrin notes that Lara's medical providers should have delivered E.R. "long before the terminal bradycardia he experienced beginning at approximately 22:42.  To a reasonable degree of medical probability, had these violations of the standard of care not occurred and had the baby been delivered in a timely fashion, he would not have suffered hypoxic-ischemic encephalopathy." (Thornton Decl. Ex. B ("Schifrin Report"), at 13 (Docket No. 40-3).)  Dr. Ballard notes that "[a]s a result of the negligent care provided to Ms. Lara by the nurse midwives at Sutter Davis Hospital and by Dr. Maayah, [E.R.] suffered profound neurologic injury.  To a reasonable degree medical probability that injury could have been avoided had he been delivered at any time before 22:42."  (Thornton Decl. Ex. C ("Ballard Report"), at 7 (Docket No. 40-3).)  An expert witness's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).  Both conclusions alone, as proposed by Sutter Davis, are insufficient to establish causation under Rule 26(a)(2)(B)(i) because they do not provide the basis or reasons for their conclusions.

Plaintiff, in her supplemental brief in opposition to summary judgment, argues that the expert reports conclude that the midwives' failure to accurately report Lara's health status and keep Dr. Maayah apprised about the condition of Lara and her fetus caused E.R.'s injury because Dr. Maayah would have ordered an emergency C-section earlier if the midwives provided an accurate report.  (Pl.'s Supplemental Opp'n 7:2-5 (Docket No.

8

51).)  Dr. Ballard, in his expert report, noted that "[i]f [the midwives] gave an accurate report to Dr. Maayah during the 22:15 call, Dr. Maayah should have ordered that the patient and the operating room be prepared for an emergency Caesarean section" and "[t]he failure by [the midwives] and Dr. Maayah to recognize the need for and take immediate action at this point represents a violation of the standard of care which had disastrous consequences for Ms. Lara and her baby."  (Ballard Report at 7.)

The problem with this hypothesis is that it is negated by the testimony of Dr. Maayah herself.  Nowhere does she state or suggest that she would have ordered a C-section, or done anything different, if she had been apprised of all the information available to the midwives.  To the contrary, even after independently reviewing the fetal monitoring strip and all of the data in the system--and with the knowledge that E.R.'s heart rate would drop around 10:42 p.m.--Dr. Maayah concluded that the data did not indicate "that there was any concern in fetal status until the moment of the bradycardia" and there was "nothing that would indicate that there would be a sudden drop" in E.R.'s heart rate.  (Maayah Dep. 127:16-20; 129:18-130:1.) Thus, an accurate report of Lara's data would not have caused Dr. Maayah to call for an earlier C-section.[2]  Any actions by the midwives in failing to provide an accurate report, therefore, is moot and "had nothing to do with the injury."  (Benson Report at

---

[2] At oral argument, counsel for Sutter Davis argued that the midwives had a duty to go over Dr. Maayah's head and report their findings to a higher authority and that their failure to do so caused E.R.'s injuries, but nowhere do any of the experts proffer such an opinion.

9

6.)  Accordingly, even assuming the midwives did not accurately report Lara's health status to Dr. Maayah, this did not cause E.R.'s injuries.

E.R. also argues that the expert reports conclude that the midwives' failure to properly monitor Lara caused E.R.'s injury.  Dr. Schifrin did state that "[t]o the extent the [nurse midwives] . . . directed, approved or were aware of the failure to appropriately monitor Ms. Lara and her fetus, they violated the standard of care, which was a substantial factor in causing the injury to E.R."  (Schifrin Report at 10.)  While this conclusory statement may appear at first blush to be an expression of an opinion as to causation, it is clear that Dr. Schifrin did not intend it as such.  Dr. Schifrin, in his rebuttal expert report, made it clear that he cannot determine the cause of E.R.'s injury.  In fact, he acknowledged in his rebuttal report that "it cannot be the role of the obstretrical/maternal-fetal expert to determine the cause of the fetal neurological injury - that rests with others."  (Rice Decl. Ex. 7, at 3 (Docket No. 51-2) (emphasis added).)

Moreover, neither Dr. Ballard nor Dr. Schifrin explains how the failure to properly monitor Lara caused E.R.'s injury.  See Fed. R. Civ. P. 26(a)(2)(B)(i) (requiring that an expert report contain "the basis and reasons for" the expert's conclusions).  While Dr Schifrin stated that "constant fetal monitoring . . . would have significantly increased the likelihood that the [midwife] (or obstetrician) would have detected fetal distress at a much earlier point during labor" (Schifrin Report at 10), there is no showing that earlier

1 | detection of fetal distress would have caused Dr. Maayah to
2 | conduct an earlier C-section.  Neither expert report establishes
3 | a causal link between the intermittent monitoring and E.R.'s
4 | injury.  See Dillingham Tug & Barge Corp. v. Collier Carbon &
5 | Chemical Corp., 707 F.2d 1086, 1092 (9th Cir. 1983) ("Negligence,
6 | in and of itself, is irrelevant in the absence of some causal
7 | connection with the injury.").
8 |           Further, Dr. Schifrin stated in his deposition that
9 | there are several "potential explanations for [the sudden fetal
10 | bradycardia]."  (Broderick Decl. Ex. 1 ("Schifrin Dep.") 146:21-
11 | 147:6 (Docket No. 42-1).)  "Mere possibility alone is
12 | insufficient to establish a prima facie case" of professional
13 | negligence.  Bromme v. Pavitt, 5 Cal. App. 4th 1487, 1498 (3d
14 | Dist. 1992).  He further notes that this causation opinion was
15 | not included in his report.  (Schifrin Dep. 147:16-148:4.)
16 |           In conclusion, Sutter Davis has not provided any expert
17 | evidence which is contrary to its own expert's opinion that the
18 | midwives did not cause E.R.'s injuries.  Accordingly, the United
19 | States is not required to indemnify Sutter Davis for E.R.'s
20 | injuries, and the court must grant third-party defendant United
21 | States' motion for summary judgment on Sutter Davis's third-party
22 | complaint for indemnity.
23 |           IT IS THEREFORE ORDERED that third-party defendant
24 | United States' motion for summary judgment be, and the same
25 | hereby is, GRANTED.
26 | Dated:  December 13, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE