1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

10                    EASTERN DISTRICT OF CALIFORNIA

11                           ----oo0oo----

12

E.R., a minor, by and through          CIV. NO. 2:14-2053 WBS CKD
13  his Guardian ad Litem,
CAROLYN YOUNG,                         MEMORANDUM AND ORDER RE: MOTION
14                                     FOR DETERMINATION OF GOOD FAITH
            Plaintiff,                 SETTLEMENT AND PETITION TO
15                                     APPROVE MINOR'S COMPROMISE
        v.
16
SUTTER DAVIS HOSPITAL; SUTTER
17  WEST WOMEN'S HEALTH; SUSAN
MAAYAH, M.D.;
18
            Defendants.
19

20  AND RELATED THIRD-PARTY
CLAIMS.
21

22                           ----oo0oo----

23          Plaintiff E.R., by and through his guardian ad litem,

24  Carolyn Young, brought this action, alleging defendants Sutter

25  Davis Hospital ("Sutter Davis"), Sutter Medical Group,[1] and Dr.

26  _____
        [1]    Sutter Medical Group is the proper name for the
27  defendant listed as "Sutter West Women's Health" in the
complaint.  (See Docket No. 75 at 2.)
28
                                 1

1   Susan Maayah were negligent during E.R.'s birth.  (Docket No. 1-

2   1.)  Plaintiff and Sutter Davis reached a settlement in the

3   amount of $875,000 and now separately move for a determination

4   that 1) the settlement was made in good faith pursuant to

5   California Code of Civil Procedure § 877.6 (Docket No. 78); and

6   2) the proposed compromise of a disputed claim of a minor was

7   proper under applicable law (Docket No. 89).  No opposition has

8   been filed in response to Sutter Davis's motion for determination

9   of good faith settlement.  No opposition has been filed in

10  response to guardian ad litem Carolyn Young's petition for

11  approval of minor's compromise with the exception of defendants

12  Sutter Medical Group's and Dr. Maayah's objection to the payment

13  of $79,500 in connection with nine retained experts.  The court

14  held a hearing on the motion and petition on March 6, 2017.

15  I.   Good Faith Settlement

16        The court finds that the settlement was made in good

17  faith based on the factors announced in Tech-Bilt, Inc. v.

18  Woodward-Clyde & Associates, 38 Cal. 3d 488, 500-01 (1985)

19  (holding that a court should consider, inter alia, the rough

20  approximation of plaintiff's total recovery and the settling

21  party's proportionate liability, the amount of the settlement,

22  and the existence of collusion, fraud or tortious conduct aimed

23  to injure the nonsettling party's interests).  See Fed. Sav. &

24  Loan Ins. Corp. v. Butler, 904 F.2d 505, 511 (9th Cir. 1990)

25  (settling party may seek a determination that a settlement was

26  made in good faith under Cal. Code of Civ. Proc. § 877.6 in

27  federal court).

28        Considering the evidence supporting an approximately

2

1   $2.3 million total damages calculation, the evidence supporting

2   Sutter Davis's contention that its nurses were not negligent, and

3   the possibility that even assuming Sutter Davis was found liable,

4   the non-settling defendants could be held liable for a

5   substantial portion of any recovery at trial, the $875,000

6   settlement is "within the reasonable range of the settling

7   tortfeasor's proportional share of comparative liability for

8   plaintiff's injuries."  See Tech-Bilt, 38 Cal. 3d at 499.

9          Moreover, there is no suggestion of collusion or fraud.

10  The fact that plaintiff is willing to accept a settlement amount

11  less than what Sutter Davis might ultimately have been required

12  to pay suggests that it is in the range of appropriate settlement

13  amounts.  Additionally, under California Code of Civil Procedure

14  § 877, any party challenging a settlement bears the burden of

15  establishing that the proposed settlement amount is "so far 'out

16  of the ballpark' that the equitable objectives of § 877 are not

17  satisfied."  Tyco Thermal Controls LLC v. Redwood Indus., No. C

18  06-07164, 2010 WL 3211926, at *13 (N.D. Cal. Aug. 12, 2010)

19  (citing Tech-Bilt, 38 Cal. 3d at 499-500).  No party here has

20  even attempted to make such a showing.

21         Finally, the court considers whether any party properly

22  objected to a motion for determination of good faith settlement.

23  Under section 877.6(a)(2), "[i]f none of the nonsettling parties

24  files a motion within 25 days of mailing of the notice,

25  application, and proposed order, or within 20 days of personal

26  service, the court may approve the settlement."  Non-settling

27  defendants Sutter Medical Group and Dr. Maayah received notice of

28  the settlement, did not file any response to Sutter Davis's

1  motion, and do not contend that the settlement was not made in
2  good faith.

3          In light of the above factors, the settlement between
4  plaintiff and Sutter Davis Hospital was made in good faith
5  pursuant to section 877.6, and the court will grant Sutter
6  Davis's motion for determination of good faith settlement.
7  II.  <u>Minor's Compromise</u>

8          The court is familiar with the allegations in this
9  case, including the undisputed severe and permanent neurological
10 injury suffered by plaintiff, as well as Sutter Davis's continued
11 claim that its nurses complied with the applicable standard of
12 care and that nothing the nurses did contributed to plaintiff's
13 injury, and the parties' damages estimates.  The settlement is
14 for a substantial sum of $875,000, and the court is not certain
15 that plaintiff would recover that amount against Sutter Davis if
16 the case proceeded to trial, in light of the evidence supporting
17 a finding of no liability, though plaintiff has produced contrary
18 evidence supporting his position.  Moreover, proper notice of the
19 settlement has been given to all parties.

20         While the settlement will result in the payment of
21 $175,198 in attorney's fees to plaintiff's counsel, it "has been
22 the practice in the Eastern District of California to consider
23 25% of the recovery as the benchmark for attorney's fees in
24 contingency cases involving minors."  <u>See</u> <u>Chance v. Prudential</u>
25 <u>Ins. Co. of Am.</u>, No. 1:15-cv-1889-DAD-JLT, 2016 WL 3538345, at *3
26 (E.D. Cal. June 29, 2016) (compiling cases).  Thus, the portion
27 of the total settlement allocated to attorney's fees, which is
28 below the 25% benchmark, is reasonable under the circumstances.

1    Based on all of these considerations, the court finds

2  that the settlement is fair and reasonable and in the best

3  interests of the minor child.  See E.D. Cal. L.R. 202(b); see

4  also Robidoux v. Rosengren, 638 F.3d 1177, 1179 (9th Cir. 2011)

5  Accordingly, the court will approve the settlement of plaintiff's

6  claims against defendant Sutter Davis and will grant Carolyn

7  Young's petition for approval of minor's compromise.

8    IT IS THEREFORE ORDERED that Sutter Davis Hospital's

9  motion for determination of good faith settlement (Docket No. 78)

10  be, and the same hereby is, GRANTED.

11    IT IS FURTHER ORDERED that the settlement bars any

12  claims for contribution or indemnity by co-defendants Sutter

13  Medical Group or Dr. Susan Maayah or any other joint tortfeasor

14  or co-obligor against Sutter Davis Hospital.

15    IT IS FURTHER ORDERED that Carolyn Young's petition for

16  approval of minor's compromise (Docket No. 89) be, and the same

17  hereby is, GRANTED.

18    IT IS FURTHER ORDERED that:

19    1.   The gross amount or value of the settlement or

20  judgment in favor of plaintiff E.R. is $875,000.

21    2.   Fees and expenses shall be paid by one or more

22  checks or drafts, drawn payable to the order of plaintiff's

23  guardian ad litem Carolyn Young and plaintiff's attorney, if any,

24  or directly to third parties entitled to receive payment

25  identified in this order for the following items of expenses or

26  damages, which are hereby authorized to be paid out of the

27  proceeds of the settlement or judgment:

28    (a)  Attorney's fees in the total amount of

1  $175,198 payable to Rice & Bloomfield, LLP.

2  (b)  Reimbursement for medical and all other

3  expenses paid by the guardian ad litem and plaintiff's attorney

4  in the total amount of $220,871.

5  (c)  Medical, hospital, ambulance, nursing, and

6  other like expenses payable in the total amount of $56,580

7  directly to the Department of Health Care Services/Recovery

8  Section, MS 4720, P.O. Box 997425, Sacramento, California 95899-

9  7425.

10  (d)  A check in the amount of $60,000 will be

11  deposited into the Special Needs Trust for plaintiff's immediate,

12  short-term needs, as detailed in Attachment 19b(4).

13  (e)  A check in the amount of $62,000 shall be

14  made payable to Rice & Bloomfield, LLP, which is ordered to

15  maintain that amount of the settlement funds in their Client

16  Trust Account for the purpose of purchasing a handicapped-

17  equipped van to allow plaintiff to be transported more

18  comfortably and more conveniently by his caregivers.  Upon

19  selection of that vehicle, Rice & Bloomfield, LLP, is directed to

20  make a check payable to the dealer or vendor from whom that

21  equipment is purchased.  Should the cost of the vehicle be less

22  than $62,000, Rice & Bloomfield, LLP, are directed to deposit the

23  unused funds into plaintiff's trust account within 15 days of the

24  purchase of the vehicle.

25  (f)  The balance of the settlement funds,

26  $300,351, will be used to purchase an annuity (structured

27  settlement), as detailed in Attachment 19b(3).

28  3.  The petitioner is authorized and directed to

1 execute any and all documents reasonably necessary to carry out

2 the terms of the settlement.

3    4. Until further order of the court, jurisdiction is

4 reserved to determine a claim for a reduction of a Medi-Cal lien

5 under California Welfare and Institutions Code § 14124.76 in the

6 amount of $300,000.

7 Dated:  March 7, 2017

             WILLIAM B. SHUBB

8             UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment 19b(3)

**19b(3)**

## ADDENDUM TO PETITION FOR COMPROMISE OF DISPUTED CLAIM OF MINOR

██████ R████

Defendant, Sutter Davis Hospital  shall fund Periodic Payments for the benefit of Minor Plaintiff through the purchase of an annuity policy from Pacific  Insurance Company by tendering a check in the amount of $300,351.00 payable to Pacific Life & Annuity Services, Inc. . Defendants' Insurer shall execute a "Qualified Assignment and Release" (Attached as Exhibit B) of its obligation to make periodic payments pursuant thereto in compliance with IRC 104(a)(2) and Section 130 of the Internal Revenue Code of 1986, as amended.   Said assignment shall be made to Pacific Life & Annuity Services, Inc. ("Assignee").   Assignee shall purchase a structured settlement annuity through Pacific Life Insurance Company, rated A+ Superior by A.M. Best Company rating service and AA- Strong rated by S&P ratings service.  The annuity will provide benefits as shown in attached "Exhibit A" Periodic Payments. No part of said $300,351.00 may be paid to the Minor Plaintiff; this Court having determined that a structured settlement annuity is in the best interest of the Minor Plaintiff. Payment of settlement proceeds is due and payable within 10 days of execution of this Court Order. No bond shall be required of Plaintiff. Receipt for purchase of annuity is to be filed with the Court within 30 days.

D.O.B.: ▓▓▓▓▓ (Age: 7.0)
Normal Life Expectancy 74.7 Years

EXHIBIT A

| Payment Description | Costs | Guaranteed Payout | Expected Payout |
|---|---|---|---|
| **TAX-FREE GUARANTEED PAYMENTS TO AGE 21 PAYABLE TO TRUST** | | | |
| $750.00 payable monthly, beginning 06/10/2017 (Age 7.3) for 13 years 8 months certain only. Last guaranteed payment is due 01/10/2031. | | $123,000.00 | $123,000.00 |
| | | | |
| **TAX-FREE GUARANTEED PAYMENTS AT AGE 21 TO TRUST FOR 15 YEARS** | | | |
| $2,034.11 payable monthly, beginning 02/03/2031 (Age 21.0) for 15 years certain only. Last guaranteed payment is due 01/03/2046. | $300,351.00 | $366,139.80 | $366,139.80 |
| Totals: | $300,351.00 | $489,139.80 | $489,139.80 |

Total Internal Rate of Return:  4.48%
Quoted through  Pacific Life Insurance Company, rated A+ Superior by AM Best and AA- Very Strong by S&P ratings service. All periodic payments including interest are income tax-free in accordance with IRS Code Section 104(a)(2). Rate of return shown is taxable equivalent based on Federal rate of 28% and State rate of 6%. Assumes funding of on or before 05-05-2017
Michael J. Pickett, CSSC. Summit Structured Settlements. (800) 326-1078. PickettStructures@HotMail.com

THE NUMBERS CONTAINED HEREIN ARE CONTINGENT UPON VERIFICATION OF DATES OF BIRTH

**MICHAEL J. PICKETT, CSSC**
Summit Settlements

800.326.1078                                                                pickettstructures@hotmail.c



EXHIBIT B

**PACIFIC LIFE**
**& ANNUITY SERVICES, INC.**

## Qualified Assignment and Release Agreement
### In Accordance With Internal Revenue Code Section 130

**"Claimant(s)":** ⬛⬛⬛⬛⬛

**"Assignor(s)":**

Assignor(1)    Sutter Davis Hospital

**"Settlement Agreement":**

[Date and title of settlement agreement, order or other document embodying the Assignor's obligation to make the agreed periodic payments]

**"Assignee":**    Pacific Life & Annuity Services, Inc.

**"Annuity Issuer":**    Pacific Life

**"Effective Date":**

This Qualified Assignment and Release Agreement is made and entered into as of the Effective Date by and among the undersigned parties with reference to the following facts:

A    Claimant(s) and Assignor are parties to or are otherwise subject to or entitled to receive payments under the above-referenced Settlement Agreement, under which Assignor has liability to make certain periodic payments to or for the benefit of Claimant(s) as specified or referred to in paragraph 12 of this Agreement (the "Periodic Payments"); and

B    Assignor and Assignee wish to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

Now, therefore, in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1.    **Assignment and Assumption; Release of Assignor.** Assignor hereby assigns to Assignee, and Assignee hereby accepts and assumes, all of Assignor's liability to make the Periodic Payments. Each Claimant hereby accepts and consents to such assignment by Assignor and assumption by Assignee. Effective on the Effective Date, each Claimant hereby releases and discharges Assignor from all liability to make the Periodic Payments.

Pacific Life refers to Pacific Life Insurance Company and its affiliates, including Pacific Life & Annuity Company. Insurance products are issued by Pacific Life Insurance Company in all states except New York and in New York by Pacific Life & Annuity Company. Product availability and features may vary by state. Each company is solely responsible for the financial obligations accruing under the products it issues. Insurance product and rider guarantees are backed by the financial strength and claims-paying ability of the issuing company.

2. **Nature of Periodic Payments.** The Periodic Payments constitute

    i.  damages (other than punitive damages), whether by suit or agreement, or

    ii. compensation under a workers' compensation act,

    on account of personal injury or sickness in a case involving physical injury or physical sickness, within the meaning of Sections 130(c) and 104(a) of the Code.

3. **Extent of Assignee's Liability.** Assignee's liability to make the Periodic Payments shall be no greater than the liability of Assignor immediately prior to the Effective Date. Assignee assumes no liability other than the liability to make the Periodic Payments. Assignee's liability to make the Periodic Payments shall be unaffected by any bankruptcy or insolvency of Assignor.

4. **Qualified Funding Asset.** Assignee will fund the Periodic Payments by purchasing from Annuity Issuer a "qualified funding asset," as defined in Section 130(d) of the Code, in the form of an annuity contract (the "Annuity") issued by Annuity Issuer and providing for payments corresponding to the Periodic Payments. Assignee shall be designated as the owner of the Annuity. All rights of legal ownership and control of the Annuity shall (subject to paragraph 9 of this Agreement) be and remain vested exclusively in Assignee; provided, however, that the Annuity shall be used by Assignee to fund the Periodic Payments and shall at all times be designated by Assignee on its records as being taken into account, under Section 130 of the Code, with respect to this Agreement. Notwithstanding anything to the contrary contained in this Agreement, neither any Claimant nor any Successor Payee shall have any rights with respect to the Annuity or the payments thereunder that would cause any amount attributable to the Annuity to be currently includible in the recipient's income or would otherwise affect the determination of when any recipient is treated as having received any payment for income tax purposes, or would otherwise prevent this Agreement from satisfying all of the conditions for a "qualified assignment" within the meaning of Section 130(c) of the Code.

5. **Delivery of Payments.** Assignee may have Annuity Issuer send payments directly to a Claimant, or, if applicable, to a Successor Payee (as defined in paragraph 8 of this Agreement), or deliver payments by electronic funds transfer to an FDIC-insured depository institution in the United States for credit (directly or indirectly) to an insured account in the name of such Claimant or Successor Payee. Such direction of payments under the Annuity shall not be deemed to afford the Claimant or any Successor Payee any rights of ownership or control of the Annuity. Each Claimant and any Successor Payee shall at all times keep Annuity Issuer apprised of such Claimant's or Successor Payee's current street address and telephone number and, if such Claimant or Successor Payee receives payments by electronic funds transfer, the name, address, bank identifier number (routing number) and telephone number of the applicable depository institution and the account number of the account to which the payments are to be credited.

6. **Discharge of Liability.** The Assignee's liability to make each Periodic Payment to the Claimant or Successor Payee designated to receive such payment shall be discharged automatically at such time as a corresponding payment is made to such Claimant or Successor Payee by the Annuity Issuer.

7. **Acceleration, Transfer of Payment Rights.** None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be

    i.  Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or

    ii. Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

No Claimant or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

8. **Contingent Beneficiaries.** Any Periodic Payments to be made after the death of any Claimant or Successor Payee shall be made to such party as shall have been designated in, or in accordance with, the Settlement Agreement or, if the Settlement Agreement does not provide for such designation, then to the party designated in conformity with this paragraph 8. Any party so designated is referred to in this Agreement as a "Contingent Beneficiary." If no Contingent Beneficiary is living at the time of the death of a Claimant or Successor Payee, payment shall be made to the decedent's estate. As used in this agreement the term "Successor Payee" refers to a Contingent Beneficiary or an estate that has become entitled to receive Periodic Payments following the death of a Claimant or a Successor Payee. Except as otherwise provided in the Settlement Agreement, no designation or change of designation of a Contingent Beneficiary shall be effective unless such change (i) is requested in a written request submitted to Assignee (or its authorized agent) in accordance with Assignee's customary procedures for processing such requests; and (ii) is confirmed by Assignee (or its authorized agent). Except for a designation that is expressly identified in the Settlement Agreement as irrevocable, any designation of a Contingent Beneficiary shall be deemed to be revocable; and no party that is designated as a Contingent Beneficiary (other than a party irrevocably designated as a Contingent Beneficiary in the Settlement Agreement) shall, solely by virtue of its designation as a Contingent Beneficiary, be deemed to have any cognizable interest in any Periodic Payments.

**Note:** Beneficiaries section only applies to guaranteed benefits (Period Certain, Lump Sum(s), Life with Certain payments).

9. **Failure of Settlement Agreement.** If at any time prior to completion of the Periodic Payments, the Settlement Agreement is declared terminated in a final, non-appealable order of a court of competent jurisdiction (or in the case of a workers' compensation settlement, a final order of the applicable workers' compensation authority): (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, and Assignee's acceptance of such assignment shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

**Failure to Satisfy Section 130(c).** If at any time prior to completion of the Periodic Payments, it is conclusively determined that the requirements of Section 130(c) of the Code have not been satisfied in connection with this Agreement in a final, non-appealable ruling or order: (i) the assignment by Assignor to Assignee of the liability to make the Periodic Payments, Assignee's acceptance of such assignment shall be of no force or effect; (ii) Assignee shall be conclusively deemed to be acting as the agent of Assignor; (iii) the Annuity shall be owned by Assignor, which shall retain the liability to make the Periodic Payments; (iv) Assignee shall have no liability to make any Periodic Payments; and (v) the parties hereto agree to cooperate in taking such actions as may be necessary or appropriate to implement the foregoing.

10. **Governing Law; Disclosure of Certain Tax Information; Binding Effect.**

    (i)    This Agreement shall be governed by and interpreted in accordance with the internal laws of the State of California ;¹ provided, however, that any Transfer of Payment Rights under this Agreement may be subject to the laws of other states in addition to the state designated above.

    (ii)   This Agreement shall be binding upon the parties hereto and their respective successors, heirs, executors, administrators and permitted assigns, including without limitation any party asserting an interest in Payment Rights.

11. **Advice, Comprehension of Agreement.** In entering into this Agreement, each Claimant represents and warrants that (i) such Claimant has relied solely upon the legal and tax advice of such Claimant's own attorneys and other advisors or has had the opportunity to seek competent legal and tax advice, who are the attorneys and advisors of such Claimant's choice, concerning the legal and income tax consequences of this Agreement; and (ii) the terms of this Agreement have been completely read by and explained to such Claimant and are fully understood and voluntarily accepted by such Claimant.

12. **Description of Periodic Payments.** The Periodic Payments are as set forth in attached Addendum No. 1, which is hereby incorporated in and made a part of this Agreement.

---

1 In choosing governing law the parties should be aware that the effectiveness of both contractual and "legal" restriction on assignment of rights to receive future Periodic Payments – including (i) contractual restrictions integral to the intended tax treatment of periodic payments and the annuities held as qualified funding assets and (ii) statutes, regulations and "rule[s] of law" prohibiting, restricting or requiring consent for assignments – may be limited (unintentionally) by sweeping override provisions enacted in §§ 9-406 and 9-408 of Revised Article 9 of the Uniform Commercial Code, which took effect in most states in July, 2001.  Most states have enacted amendments that make the overrides in §§ 9-406 and 9-408 inapplicable to structured settlements; but until appropriate corrective amendments are in effect nationwide, the parties to a qualified assignment may find it advisable to avoid designating as governing law the law of a state that has not yet enacted such amendments.

This Qualified Assignment and Release Agreement is signed in one or more counterparts as of the Effective Date by the following:

Assignor: Sutter Davis Hospital

By: _____
            Authorized Representative

Title: _____


Assignee: Pacific Life & Annuity Services, Inc.          Assignee: Pacific Life & Annuity Services, Inc.

By: _____          By: _____
            Authorized Representative                                Authorized Representative

Title: _____          Title: _____


Claimant: E███ R███                          Approved as to Form and Content:

By: _____          _____
            Guardian ad Litem                               Claimant's Attorney

## Addendum No. 1
## Description of Periodic Payments

Payee (1):
Benefit(s):

**The California Pooled Trust  FBO E███ R███**

1. **Period Certain Annuity** - $750.00 payable monthly, guaranteed for 13 year(s) and 8 month(s), beginning on 06/10/2017, with the last guaranteed payment on 01/10/2031.

2. **Period Certain Annuity** - $2,034.11 payable monthly, guaranteed for 15 year(s), beginning on 02/03/2031, with the last guaranteed payment on 01/03/2046.

If E███ R███ dies on or before 01-03-2046, Insurer or its Assignee will pay benefits to E███ R███'s beneficiary as follows:

Insurer or its Assignee will pay E███ R███'s beneficiary a single lump sum. The single lump sum will be equal to 95% of the cost of an annuity contract, based on the annuity issuer's structured settlement rates in effect on the date of death, which would provide benefits equal to 100% of the remaining guaranteed payments.

If such annuity rates are not available, the commuted value shall be the present value of the remaining guaranteed payments calculated using the following interest rate: the annual effective yield based on the current bid price as reported in the Wall Street Journal for the highest yielding U.S. Treasury Note or Bond with a maturity date not exceeding the Rider Expiry Date available at the close of business on the date of E███ R███'s death plus one percent. If this date is not a business day, the rates reported on the next following business day will be used.

Initials

Assignor(s): _____

Assignee: _____

Assignee: _____

Claimant(s): _____

PL QAR

6

v2012

Attachment 19b(4)

# REQUEST FOR CONSIDERATION

WHEREAS, under the date of _February 22nd_, 2017___, the undersigned Grantor executed an irrevocable Joinder Agreement for the ___California___ Pooled Trust (the "Agreement"), the effect of which was to establish a Trust sub-account (the "sub-account") for the sole benefit of _____ (the "Beneficiary") within the ___California___ Pooled Trust (the "Trust"); and,

WHEREAS, the Grantor understands that any amounts remaining in the sub-account at the death of the Beneficiary will be retained in the Trust to benefit other people with disabilities as more fully described in the Agreement; and

WHEREAS, the Grantor understands that to the extent any amounts do not remain in the Trust at the death of the Beneficiary, such amounts must be used to reimburse each state in which the Beneficiary received government assistance, based on each state's proportionate share of the total government assistance paid by all of the states on the Beneficiary's behalf; and

WHEREAS, the Grantor hereby formally makes and presents this Request for Consideration to the Center for Special Needs Trust Administration, Inc., as Trustee of the ___California___ Pooled Trust, with the full and complete understanding that no obligations or duties are created herein;

NOW, THEREFORE:

1.1   Incorporation of Recitals.   The above recitals are true and correct and are incorporated herein as an integral part of this Request for Consideration.

1.2   Amount Requested to be Retained in Trust.   The Grantor requests that, upon the death of the Beneficiary, the greater of ___20___ % or $ ___5,000.00___ be deemed surplus Trust property and be retained by the Trust and used for the purposes set out in the Agreement.

1.3   Balance Requested to be Released From Trust.   The Grantor requests that any balance remaining, over and above the greater of ___20___ % or $ ___5,000.00___, be released from the Trust and distributed to each state in which the Beneficiary received government assistance, based on each state's proportionate share of the total government assistance paid by all of the states on the Beneficiary's behalf.

1.4    <u>Remainder Amount</u>   If any balance were to remain after following the requests in paragraphs 1.2 and 1.3 above, the Grantor requests that any such remaining balance be distributed as follows:

50% to Jennifer Lara Rehg the Mother of ███

50% to Morgan Rehg the Father of ███

If Jennifer were to pre-decese Morgan than 100% to Morgan.

If Morgan were to pre-decese Jennifer than 100& to Jennifer.

If both Jennifer and Morgan are deceased than 100% to the the Estate of ██████.

IN WITNESS WHEREOF, the undersigned Grantor has signed this Request for Consideration on this 22 day of February , 20 17 .

GRANTOR'S SIGNATURE

*Jnfr Rehg*

Grantor Signature

Jennifer Rehg
Please Print Name

Address: 824 Hardy Dr
West sacramento CA 95605

WITNESS SIGNATURES (2)

1. *[signature]*

Witness Signature

MORGAN Rehg
Please Print Name

Address: 824 HARDy DR
West Sac, CA 95605

Page 2 of 3

2. _Ibiee_
Witness Signature

_Albie Madrigal_
Please Print Name

Address: _813 Harbor Blvd._
_W-Sac, CA 95691_

STATE OF _____ ))
COUNTY OF _____ ))

    Sworn to and subscribed before me this ____ day of _____, _____, by _____ who [  ] is personally know by me, or who [  ] produced _____ as identification.

_____
Notary Public

**See Attached California**
**All-Purpose Acknowledgement**

Page 3 of 3

# CALIFORNIA JURAT

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                               }

COUNTY OF ~~SACRAMENTO~~ Yolo                      }

Subscribed and sworn to (or affirmed) before me on this 22nd day of _____Feb_____ , 20 17

by _____ JENNIFER   ROCHELLE   REHG _____

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____

SANJEEV PATHAK
COMM. # 2134782
NOTARY PUBLIC - CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES DEC. 20, 2019

_____ OPTIONAL _____

Description of Attached Document: _____

Title of Type of Document: _____

Number of Pages: _____

Document Date: _____

Other: _____

Acceptance Date: _____     Trust sub-account number: _____

(To be provided by Trustee)

*Top Is For Office Use Only*

## JOINDER AGREEMENT FOR THE CALIFORNIA POOLED TRUST

The undersigned, in consideration of the covenants, promises, and representations contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby enrolls in and adopts the Declaration of Trust (the "Declaration of Trust"), executed by The Center for Special Needs Trust Administration, Inc. (the "Trustee"), and dated the 5th day of February, 2002, establishing The National Pooled Trust (the "Trust"), which is attached hereto as Exhibit "A" and incorporated herein by reference. The effect of joining the Trust through this Pooled Trust Joinder Agreement (the "Agreement") shall be to establish a Trust sub-account for the following named Beneficiary: _____. This Agreement, and the separate Pooled Trust sub-account created hereunder, shall be irrevocable upon acceptance of the Agreement by the Trustee and shall be established with resources, including assets and/or income, belonging solely and exclusively to the Beneficiary.

### Article I
### Definitions

1.01    The term "Trustee," means The Center for Special Needs Trust Administration, Inc., which is a nonprofit association, or its successor or successors, and such term includes any Co-trustee that may be appointed by the Trustee to aid in the administration of the Trust.

1.02    The terms, "supplemental needs, "supplemental care," and "government assistance" all have the same meaning that is defined in Article II of the Declaration of Trust.

1.03    The term "Beneficiary" means the above named disabled individual for whose benefit the separate Pooled Trust sub-account is being established, maintained, and managed under this Agreement.

1.04    The term "state" shall include, but not be limited to, the state of California and/or the State Department of Health Services for the State of California, or such other state agency responsible for administering government assistance programs, as the context might require. If the Beneficiary is the resident of a state other than California, the term "state" shall also include such Beneficiary's state of residence and/or applicable state agency.

## Article II
### Distributions From Trust Sub-account During Life of Beneficiary

Distributions from the Beneficiary's Trust sub-account may be made during the life of the Beneficiary in accordance with the provisions below.

2.01   <u>Individualized Care Plan</u>.  At the Trustee's discretion, an individualized care plan shall be prepared for the Beneficiary, which the Trustee may consider, in its sole and absolute discretion, when reviewing requests for any distribution from the Beneficiary's Trust sub-account.

2.02   <u>Account Established Solely for the Benefit of the Beneficiary</u>.  The Beneficiary's Pooled Trust sub-account is established solely for the benefit of the Beneficiary, and the Trustee shall make all distributions for the sole benefit of the Beneficiary, both at the time this Trust sub-account is established and/or anytime in the future.  Further, the Trustee shall comply with this sole benefit requirement by ensuring that the sub-account funds shall benefit no one other than the Beneficiary for whose benefit this sub-account is established before the state's interest has been satisfied pursuant to the California Code of Regulations, subsection (a)(4)(E), of Section 50489.9, *Trusts Other than Those Described in 50489.1 or 50489.5*.

2.03   <u>Transfer Provision</u>.  In entering this Agreement, it is specifically recognized that under Section 3259.7 of the State Medicaid Manual, *Exceptions to Treatment of Trusts Under Trust Provisions* ("Transmittal 64"), which is promulgated by the Centers for Medicaid & Medicare Services (CMS). subsection B.2. provides in part:

> Resources placed in an exempt trust for a disabled individual are subject to imposition of a penalty under the transfer of assets provisions *unless* the transfer is specifically exempt from penalty as explained in §3258.10 *or unless* the resources placed in the trust are used to benefit the individual, and the trust purchases items and services for the individual at fair market value.

Accordingly, the Trustee shall administer the Beneficiary's Pooled Trust sub-account so that all of the resources placed in the sub-account are used to benefit the individual Beneficiary, and the sub-account shall purchase items and services for the individual Beneficiary at fair market value.

2.04   <u>Distributions Pending Preparation of an Individualized Care Plan</u>.  Pending the final preparation of an individualized care plan established for the Beneficiary, if applicable and/or required by the Trustee. any nonsupport items that are required for maintaining the Beneficiary's health, safety, and welfare may be provided for the benefit of the Beneficiary when. in the sole and absolute discretion of the Trustee, such needs are not being met by any public agency, or are not otherwise being provided by any other source of income available to the Beneficiary.

2.05   <u>Discretion of Trustee: Use of Assets: Desires for Use of Assets</u>.  The Grantor recognizes and acknowledges that all distributions are subject to the Trustee's sole and absolute discretion, that the Trustee shall only make distributions solely for the Beneficiary's supplemental

needs and supplemental care, and that the Trustee shall possess and exercise the authority to allocate all distributions between principal and income as it determines in its sole and absolute discretion. With this recognition and acknowledgment in mind, the Grantor has expressed the Grantor's desires as to how assets in the Trust sub-account might be used on behalf of the Beneficiary during the Beneficiary's lifetime.

2.06    Notice of Application; Acceptance, Denial; Termination of Benefits.  In order to enjoy the benefits of the Trust to the fullest extent possible, the Beneficiary, or the Beneficiary's legal representative, shall notify the Trustee whenever the Beneficiary: a) applies for government assistance; b) has an application for government assistance approved; c) has an application for government assistance denied; and/or, d) has government assistance terminated.  Notice shall be in writing, by certified mail, return receipt requested, in care of the Trustee, The Center for Special Needs Trust Administration, Inc., at the address set forth in the General Instructions hereto, and which is also set forth on the last page of this Agreement, or at such other address as the Trustee may designate from time to time.  Such notice to the Trustee shall be made within 10 (ten) days of the event that triggers the Beneficiary's duty to give notice under this paragraph 2.06.  In no event shall the Trustee be liable for making disbursements which result in a reduction of government assistance, a termination of government assistance, or ineligibility for government assistance when the Trustee did not have actual notice of such government assistance, or other circumstances giving rise to such termination, reduction, and/or ineligibility, at the time such disbursements may have been made or requested, or when the Beneficiary or the Beneficiary's representative waives such liability in a signed writing.  Consistent with the Beneficiary's affirmative duty to notify any relevant government agencies administering the Beneficiary's government assistance program(s) of any material change in circumstances, all such duties to notify shall continue to be the Beneficiary's in the event that distributions and/or disbursements may have such a material effect, and the Trustee shall have no duty in this regard.

## Article III
## Termination of Trust; Distributions Upon the Beneficiary's Death

3.01    Termination of the Trust.  In the event the Trust sub-account should be terminated for any reason whatsoever, then all amounts remaining it the Trust sub-account shall be paid to the State Department of Health Services for the state of California up to an amount equal to the total medical expenses paid on the Beneficiary's behalf.

3.02    Distributions at the Beneficiary's Death.  Upon the death of the Beneficiary, the primary beneficiary of the Trust sub-account shall be the State Department of Health Services for the state of California.  From any assets that remain for distribution, the State Department of Health Services shall be entitled to an amount that is equal to the total medical expenses paid on the Beneficiary's behalf over the Beneficiary's lifetime.

3.03    Prohibited Distributions.  The Trustee shall make no distributions for any debts or

expenses, including but not limited to expenses for the Beneficiary's last illness and funeral, outstanding debt, or any other types of payments, prior to distributing any remaining amounts to the State Department of Health Services for the state of California for the total medical expenses paid on the Beneficiary's behalf over the Beneficiary's lifetime. Pursuant to subsection (a)(4)(E), of Section 50489.9, *Trusts Other than Those Described in 50489.1 or 50489.5*, the state shall receive this amount only to the extent that funds remain in the Beneficiary's sub-account and are not retained by the Trust to cover management and investment fees associated with the sub-account.

3.04   Intent of This Article III.   In setting forth the terms of the foregoing provisions, it is the mutual intent of Grantor and Trustee that any amounts remaining in the Beneficiary's separate Trust sub-account at the death of the Beneficiary be administered so as to conform with all of the requirements of 42 U.S.C. §1396p and/or related statutes, including state statutes and regulations that are consistent with the provisions and purposes of the Omnibus Budget Reconciliation Act of 1993, amending 42 U.S.C. § 1396p and specifically pertaining to reimbursement to the states for government assistance provided on behalf of the individual Beneficiary over the Beneficiary's lifetime. Recognizing that the implementation of the foregoing statutes and regulations are frequently subject to differing state-by-state interpretation in their practical application, it is the further mutual intent of the Grantor and Trustee that this Agreement be broadly construed so as to comply with any interpretation and/or changes in any interpretation within the jurisdiction where the Trust sub-account is administered and/or where the Beneficiary received government assistance.


## Article IV
## Trustee Fees and Administrative Expenses

The Trustee shall be entitled to a reasonable trustee fee as compensation for its administrative services, provided such fee is compatible with the trustee fees that it normally charges for Trust sub-accounts of a similar size and complexity. Also, the Trustee shall be entitled to reimbursement for any reasonable costs that it might normally occur from time to time in the fulfillment of its administration duties.


## Article V
## Miscellaneous Provisions

5.01   Amendments.   The provisions of this Joinder Agreement may be amended as the Grantor and the Trustee may jointly agree, provided any such amendment is consistent with the Declaration of Trust and any then-applicable law. Additionally, the Trustee may also make any unilateral amendments as may be necessary to comply with any changes in the law and/or agency policy or for the proper and efficient administration of the Trust as determined in the Trustee's sole discretion without notice to the Beneficiary or the Beneficiary's representative. However, under no circumstance shall any amendment defeat the purpose and intent of this Agreement and/or the interest of the State Department of Health Services for the State of California, or any of the states, to

be reimbursed for any government assistance that such state(s) provided to the Beneficiary over his or her lifetime.

5.02   Taxes.   The Grantor acknowledges that: a) the Trustee has made no representations to the Grantor that contributions to the Trust are deductible as charitable gifts, or otherwise; b) Trust sub-account income, whether paid in cash or distributed in other property, may be taxable to the Beneficiary, subject to applicable exemptions and deductions; and, c) Trust sub-account income may be taxable to the Trust, and when this is the case, such taxes shall be payable directly from the Trust sub-account that requires such taxes to be paid.  For the sole purpose of determining tax liability and having the Beneficiary's trust sub-account treated as a grantor trust, the Trustee may apply trust income to the payment of premiums on policies of insurance on the life of the Beneficiary without the approval or consent of any adverse party within the meaning of Section 672(a) of the Internal Revenue Code of 1986, as amended.  For purposes of this paragraph 5.02, "trust corpus" shall have the same meaning as "Trust sub-account" used elsewhere throughout this Joinder Agreement and the Declaration of Trust.  Further, nothing in this paragraph 5.02 shall in any way affect or modify the intent and/or purpose of the Trust or any of the provisions found in this Joinder Agreement and/or the Declaration of Trust.  The Trustee may make distributions directly to the taxing authority of any such amounts of income or principal of the Trust as may become necessary to satisfy the Beneficiary's tax obligations upon the Beneficiary making such request to the Trustee.  The Trustee shall have the sole and independent discretion to claim any tax deductions or elections useful to reduce the tax paid by the Trust, if any.

5.03   Testamentary Power of Appointment Over Residue.   Subject to the provisions of Article III above, and all other relevant provisions, laws, and/or regulations requiring the Trustee to reimburse each state in which the Beneficiary received government assistance, the Beneficiary shall have the power, through his or her Last Will and Testament, and by making express reference to this power, to direct that part or all of the property remaining in the Trust may be delivered to such persons or their issue as the Beneficiary so directs.  However, under no circumstances shall the Beneficiary have the power to direct that such property be delivered to: the Beneficiary; the Beneficiary's estate; the Beneficiary's creditors; or the creditors of the Beneficiary's estate.  For purposes of this paragraph 5.03, the purpose of which is to prevent any gift tax liability, the term "property" refers to any such residual amounts as may remain after the Trustee follows the provisions set forth in Article III above.

5.04   Trustee's Duty Regarding Government Assistance Programs.   In providing for the Beneficiary's special needs, and/or in making determinations regarding disbursements and/or distributions for the benefit of the Beneficiary's special needs, the Trustee shall always consider the government assistance for which the Beneficiary is currently eligible, or for which the Beneficiary may be attempting to become currently eligible, and the Trustee shall make no disbursements and/or distributions that would cause the Beneficiary to be or become ineligible for such government assistance.  Distributions that the Trustee may or may not have made in the past because of less restrictive government assistance programs, more restrictive government assistance programs, or government assistance programs that the Beneficiary did not apply for, qualify for, and/or receive, shall not serve as a pattern, or be construed to serve as a pattern, of any sort that establishes a duty

or discretion in the Trustee to continue making such distributions, to continue refusing such distributions, or to make or to refuse such distributions in the future as the individual case may be. The Trustee shall have no discretion in this regard, and it shall be an absolute duty of the Trustee to follow the directions herein.

5.05    Information Concerning Grantor and Beneficiary.   All information concerning the Grantor and the Beneficiary hereunder, as may be required by the Trustee, shall be provided by the Grantor. The Grantor hereby warrants that all information provided to the Trustee, both at the time of establishing the Beneficiary's sub-account and at all times thereafter, is true and complete to the best of the Grantor's knowledge as of the time of the Grantor providing such information. The Trustee and its Co-trustees, their employees and/or agents shall be entitled to rely on all such information in performing their duties hereunder toward the Grantor and/or the Beneficiary without being required to make further inquiry as to accuracy or completeness of such information. The sufficiency of such information shall be determined by the Trustee in its sole and absolute discretion, and the Trustee shall in no event be required to inquire further as to the accuracy, veracity, authenticity, or completeness of any information submitted by the Grantor.

5.06    Appointment of Advocate or Advisor.   The Trustee may appoint and retain an advocate and/or advisor for the express purpose of assisting the Trustee in evaluating trust disbursements and evaluating the Beneficiary's special needs. The Trustee shall compensate any such advocate and/or advisor from the Trust estate at a rate equal to the usual and customary fee for such services, provided such fees are reasonable and appropriate in the Trustee's sole discretion.

5.07    Governing Law.   This Joinder Agreement is created under, and governed exclusively by, the choice of law set forth in §10.3 (as may be amended from time to time) of the Declaration of Trust, attached hereto as Exhibit "A" and is explicitly adopted and incorporated herein by reference. Not withstanding the governing law as set forth herein, this Agreement shall also be governed by the applicable provisions of §§3600-3605 of the California Probate Code, together with any additional related sections that may specifically apply to special needs trusts from time to time.

5.08    Dispute Resolution.   Any dispute which may arise between the parties hereto, including the Beneficiary, concerning any matter related to or arising from this Joinder Agreement and/or the Trust, shall be resolved exclusively by binding arbitration between the parties. Said arbitration shall be conducted pursuant to the then-obtaining arbitration rules of the American Arbitration Association. The arbitration shall be conducted in Clearwater, Florida, at a location to be designated by the arbitrator(s).

5.09    Authority of Grantor to Contribute on Behalf of Beneficiary.   The Grantor shall furnish to the Trustee such proof as the Trustee, in its sole and absolute discretion, may require in order to satisfy itself that the Grantor has the requisite status under law to contribute to the Trust on behalf of the Beneficiary. The sufficiency of such proof shall be determined by the Trustee in its sole and absolute discretion. Further, such proof shall be deemed to be conclusive evidence that the Grantor enjoys the requisite status to contribute. The Trustee shall in no event be required to inquire

further as to the accuracy, veracity, authenticity, or completeness of any proof submitted by the Grantor.

   5.10   _Agreement Understood by Grantor._ The Grantor hereby agrees to and acknowledges that the Grantor:

   a)   has reviewed this Joinder Agreement and fully understands its terms;

   b)   has had a full, complete, and fair opportunity to seek the advice of legal counsel concerning this Joinder Agreement, whether or not the Grantor has done so;

   c)   agrees to be bound by the terms of this Joinder Agreement, and said Agreement is binding on the Grantor's heirs, successors, and assigns; and,

   d)   is not executing this Joinder Agreement because of any promises, covenants or representations other than those contained in this Joinder Agreement and the Declaration of Trust.

   5.11   _Agreement Constitutes Entire Understanding Between Parties._ This Joinder Agreement, together with the Declaration of Trust attached hereto as Exhibit "A" and incorporated herein by reference, constitutes the entire understanding between the parties. No promises, agreements or representations, expressed or implied, have been made, except those contained in this writing, and all corrections and additions hereto shall be in writing, specifically designated as an addition or amendment to this Joinder Agreement, and signed by the parties.

   5.12   _Severability._ Any provision of this Joinder Agreement that is adjudged invalid or unenforceable under the laws of any place where the terms of the Agreement are to be performed, or are sought to be enforced, shall be deemed inoperative without invalidating such provision elsewhere or any of the other provisions of this Agreement.

   5.13   _Section Headings._ Section headings are for purposes of convenience only and shall have no bearing on the interpretation of any provision of this Joinder Agreement or the Declaration of Trust.

   5.14   _Rules of Construction._ In entering this Agreement, it is the intent of the Grantor and Trustee to comply fully with the California Code of Regulations, Section 50489.9, _Trusts Other than Those Described in 50489.1 or 50489.5,_ which pertains to Special Needs Trusts and Pooled Trusts, and all such enabling legislation such as 42. U.S.C. §1396p(d)(4)(C), together with all related rules and regulations, both State and Federal. As such, this Agreement shall be construed as broadly as possible to meet this purpose, and any ambiguities that may be advisable to be clarified during the administration of the Trust sub-account relative to the Trustee and/or any reviewing agency shall be resolved in favor of achieving this broad objective of compliance.

   IN WITNESS WHEREOF, the undersigned Grantor has signed this Joinder Agreement on

this 22 day of February , 2017, and the Trustee has accepted and signed this Joinder
Agreement on the 22 day of February , 2017.

GRANTOR'S SIGNATURE

_____
Grantor Signature

Jennifer Lara Rehg
Please Print Name

Address: 825 Hardy Drive
West Sacramento, CA 95605

WITNESS SIGNATURES (2)

1. _____
Witness Signature

MORGAN Rehg
Please Print Name

Address: 824 HARDY DR
West Sac, CA 95605

2. _____
Witness Signature

Albie Madrigal
Please Print Name

Address: 813 Harbor Blvd.
W. Sacramento, CA 95641

**See Attached California
All-Purpose Acknowledgement**

STATE OF CALIFORNIA           ))
COUNTY OF _____  ))

On this ____ day of _____, 20___, before me _____, a
Notary Public, personally appeared _____ who proved to me on the basis of
satisfactory evidence to be the person whose name is subscribed to the within instrument and
acknowledged to me that he/she executed the same in his/her authorized capacity, and that by his/her
signature on the instrument the person, or the entity upon behalf of which the person acted, executed the
instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the
foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
_____, Notary Public

*Joinder Agreement for The California Pooled Trust*
Copyright 2004. The Center for Special Needs Trust Administration. Inc.

Page 8 of 9

# CALIFORNIA ALL PURPOSE ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA                    }

COUNTY OF _Yolo_                    }

On _2/22/17_ before me, _Sanjeev Pathak_ Notary Public,
(here insert name and title of the officer)

personally appeared _Jennifer Rochelle Rehs_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SANJEEV PATHAK
COMM. # 2134782
NOTARY PUBLIC · CALIFORNIA
SACRAMENTO COUNTY
COMM. EXPIRES DEC. 20, 2019

Signature: _____ (Seal)

_____ OPTIONAL _____

Description of Attached Document

Title or Type of Document: _____   Number of Pages: _____

Document Date: _____   Other: _____

The Center for Special Needs
Administration, Inc., Trustee

By:_____

_____
Please Print Name
Address: The Center for Special Needs
Trust Administration, Inc.
4912 Creekside Drive
Clearwater, FL 33760

WITNESS SIGNATURES (2)

1._____
Witness Signature

_____
Please Print Name

Address:_____

_____

2._____
Witness Signature

_____
Please Print Name

Address:_____

_____

STATE OF _____   ))
COUNTY OF _____   ))

Sworn to and subscribed before me this _____ day of _____, 20_____, by
_____ as _____ for The Center for Special
Needs Trust Administration, Inc., and who is:
[  ] personally know by me; or,
[  ] produced _____ as identification.

_____
Notary Public

*Joinder Agreement for The California Pooled Trust*
Copyright 2004. The Center for Special Needs Trust Administration, Inc.

Page 9 of 9

Exhibit "A"

Declaration of Trust Goes Here

*Please Note: After you have completed your Joinder Agreement, please return to the Download Page. Download and print a copy of the Declaration of Trust which will become Exhibit "A" of your Joinder Agreement.*

# REFORMED AND RESTATED
# DECLARATION OF TRUST
### OF
#### THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC.

WHEREAS, THE CENTER FOR SPECIAL NEEDS TRUST ADMINISTRATION, INC., a 501 (c)(3) Non-Profit Corporation organized under the laws of the State of Florida (the "Center"), established The National Pooled Trust under a Master Declaration of Trust dated February 5, 2002 (the "Master Declaration"); and

WHEREAS, the Master Declaration reserved specific authority in paragraph 1.5 for the Center to amend The National Pooled Trust within its discretion without notice so as to effectuate its purposes and intent and/or so that it would conform with any changes and/or interpretations of statutes, rules, or regulations relating to 42 U.S.C. §1396p or related statutes, including but not limited to state statutes and regulations that are consistent with the provisions and purposes of the Omnibus Budget Reconciliation Act of 1993, amending 42 U.S.C. § 1396p; and,

WHEREAS, the Center amended and restated the Master Declaration on October 27, 2009, on December 5, 2014, and again on November 4, 2015 (the "Restated Master Declaration"); and,

WHEREAS, the Restated Master Declaration also created and reserved specific authority in paragraphs 1.5 and 9.5 for the Center to reform or amend The National Pooled Trust within its discretion without notice so as to effectuate its purposes and intent and/or so that it would conform with any changes and/or interpretations of statutes, rules, or regulations relating to 42 U.S.C. §1396p or related statutes, including but not limited to state statutes and regulations that are consistent with the provisions and purposes of the Omnibus Budget Reconciliation Act of 1993, amending 42 U.S.C. § 1396p; and,

WHEREAS, the Center has determined within its discretion that reforming and amending the Restated Master Declaration will effectuate its purposes and intent due to certain interpretations of Pooled Trusts recently made by the Social Security Administration;

NOW THEREFORE, the Center for Special Needs Trust Administration, Inc. hereby exercises its authority to reform and amend The National Pooled Trust and restates therefore the reformed Master Trust in its entirety below, with such reformation to be effective prospectively and retroactively immediately upon its execution, nunc pro tunc, on this 5th day of April, 2016.

### ARTICLE 1
### ESTABLISHMENT OF TRUST

1.1 <u>Trust is Established.</u>   The Trustee incorporates the recitals above and hereby establishes a pooled trust pursuant to 42 U.S.C. §1396p, to be made available for national use, for the sole benefit of the Beneficiaries hereunder, pursuant to 42 U.S.C. §1396p (d)(4)(C), amended

August 10, 1993 by the Omnibus Budget Reconciliation Act of 1993, and pursuant to the Social Security Policy Operation Manual (POMS) SI 01120.203, *Exceptions to Counting Trusts Established on or after 1/1/00*, and all related POMS, all of which are used by the Social Security Administration for the purpose of determining Supplemental Security Income eligibility and the availability of trust assets.

1.2   Name of Trust.   Because of the national scope and intent of the pooled trust established under this Declaration (the "Trust"), it may be properly referred to under alternate names as the Trustee may deem appropriate from time to time and from place to place.  More specifically, and as to any of the individual States in which the Trust may come to operate for the benefit of Beneficiaries, the Trust may be called: a) The National Pooled Trust; b) The "Local State Pooled Trust," as such term is defined below in Article 2; or, c) both of the preceding names to be used interchangeably as the Trustee determines in its sole discretion to be in the best interests of the Trust and the Trust Beneficiaries.

1.3   Initial Funding of Trust.   Concurrently with the execution of this Declaration, the Trustee assigns, conveys, transfers, and delivers a lump sum payment of One Hundred Dollars and No Cents ($100.00) to the Trust.  The Trust estate shall consist of this initial contribution and any additional contributions in cash or property made to the Trust estate at any time by any Grantor in accordance with the provisions below in Article 4, Grantor Contributions.

1.4   Irrevocability.  This Declaration of Trust and the Trust created hereunder shall be irrevocable.

1.5   Reformations and Amendments to Trust.  Notwithstanding the irrevocability of this Declaration of Trust and the Trust created hereunder, as set forth in paragraph 1.4 above, this Declaration and the Trust created hereunder may be reformed and/or amended from time to time to effectuate its purposes and intent.  The Trustee may also, but is not required to, reform and/or amend this Declaration and the Trust created hereunder so that it conforms with any statutes, rules, or regulations that are approved by any governing body or agency relating to 42 U.S.C. § 1396p or related statutes, including state statutes and regulations that are consistent with the provisions and purposes of the Omnibus Budget Reconciliation Act of 1993, amending 42 U.S.C. § 1396p.  Any reformations and/or amendments hereunder may be made prospectively or retroactively, nunc pro tunc, at the Trustee's discretion and shall not require advance or subsequent notice to Beneficiaries. Under no circumstances, however, shall the Trustee amend any provision that would: (i) render a previously made irrevocable contribution revocable; (ii) allow for early termination of a Trust sub-account; (iii) cause the Trust to fail to comply with any of the provisions of 42 U.S.C. § 1396p, related statutes, and/or related regulations and POMS; or, (iv) abandon or otherwise abrogate the basic purposes or objectives of the Trust.

## ARTICLE 2
### DEFINITIONS

2.1   "Beneficiary" means a disabled person, as defined in § 1614 (a)(3) of the Social Security Act (42 U.S.C. § 1382c(a)(3)), who qualifies under 42 U.S.C. § 1396p and who a Grantor shall specify as the sole beneficiary under any one of the particular Trust sub-accounts created under

THE NATIONAL POOLED TRUST
*Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)*
Copyright, 2016.  The Center for Special Needs Trust Administration, Inc.

and within this Trust by such Grantor.

2.2     "Co-Trustee", if any, means an entity selected by the Trustee and designated as such to assist with the management, administration, allocation, and disbursement of Trust assets and property. Provided, however, that the Trustee is strictly limited to selecting and designating only those entities that are 501(c)(3) non-profit associations that have been granted tax exempt status by the Internal Revenue Service. Under no circumstances shall the Trustee designate any entity as Co-Trustee that is not a 501(c)(3) non-profit associations, nor shall the Trustee otherwise fail to retain sufficient authority and control over the pooled trust to meet the criteria in Section 1917(d)(4)(C) of the Social Security Act and 42 U.S.C. §1396p(d)(4)(C) and as further described in SI 0120.225 of the POMS.

2.3     "Government assistance" means all insurance, services, benefits, medical assistance paid under a State plan, financial assistance, and any other assistance of any kind that may be provided by any county, state, or federal agency to, or on behalf of, a Beneficiary. Such assistance includes, but is not limited to, the Supplemental Security Income program (SSI), the Old Age Survivor and Disability Insurance Program (OASDI), the Supplemental Security Disability Income program (SSDI), Title XVIII of the Social Security Act (Medicare), Title XIX of the Social Security Act (Medicaid), and Section 8 of the United States Housing Act of 1937 (42 U.S.C. 1437f), together with any similar, additional, or successor public programs.

2.4     "Grantor" means a parent, grandparent, or legal guardian of a Beneficiary, a Beneficiary himself or herself, or any person or entity acting pursuant to an order by a court, who contributes money and/or property to the Trust. Grantor shall also include, when applicable, any person or entity that contributes his, her, or its own property to the Trust for the sole benefit of a Beneficiary, whether by gift, will, contract, or agreement.

2.5     "Joinder agreement" means the individual written agreement between the Trustee and a Grantor by which the Grantor establishes an individual Trust sub-account for the sole benefit of a Beneficiary.

2.6     "Legal representative" or "representative" means a legal guardian, conservator, agent acting under an appropriate power of attorney, trustee, representative payee, or any other agent, fiduciary, or representative of a Beneficiary that has either been selected by: the Beneficiary; a court of competent jurisdiction; a governmental or quasi-governmental agency; or, the Trustee within its sole discretion.

2.7     "Local State Pooled Trust" means that particular name selected by the Trustee to best reflect or identify the particular State, locale, or community in which the Trust is being operated for the benefit of Beneficiaries wherein the proper name of that particular State, locale, or community is substituted for "National" in the name "The National Pooled Trust," or some other variation deemed suitable by the Trustee such that the Trust may be identified locally within the State, locale, or community.

2.8     "Non-support payments" means payments made by the Trustee for supplemental needs or supplemental care.

THE NATIONAL POOLED TRUST
Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)
Copyright, 2016. The Center for Special Needs Trust Administration, Inc.

any voluntary or involuntary creditor, including those who have provided support and maintenance for a Beneficiary. Under no circumstances may any Beneficiary or representative of a Beneficiary compel a distribution from the Trust sub-account maintained for that Beneficiary or from any other part of the Trust estate.

## ARTICLE 4
### GRANTOR INTENT, CONTRIBUTIONS, AND IRREVOCABILITY

4.1     Grantor's Intent to Establish a Supplemental Fund.  In making contributions to the Trust, it shall not be the intention of any Grantor to displace any public and/or private financial assistance that may otherwise be available to any Beneficiary. It shall therefore be the specific intention of all Grantors to establish a supplemental fund pursuant to 42 U.S.C. §1396p and to limit the Trustee's disbursements to, or on behalf of, a Beneficiary to that respective Beneficiary's supplemental care and supplemental needs only.

4.2     Effect of Grantor's Contribution.  Specifically subject and subordinate to Article 3 above, and to the Trustee's sole and absolute discretion in making distributions, the effect of a Grantor's contribution to the Trust as it applies to any one particular Beneficiary is such that total distributions made on behalf of a Beneficiary shall not exceed an amount equal to the total of all contributions made to such Beneficiary's Trust sub-account, plus any undistributed income.

4.3     Future Transfer of Property.  Property, or interests in property, may be designated for future transfer by a Grantor as a contribution to the Trust. Examples of contributions designated for future transfer include, but are not limited to, a life insurance policy on the Grantor's life in which the Trust is designated as a beneficiary, or the Trust being named as a beneficiary of any future interest in property, such as that which might pass by way of a Grantor's Last Will and Testament.

4.4     Irrevocability of Joinder Agreements.  Subject to approval by the Trustee, the Trust shall be effective as to any particular Beneficiary upon contribution of property and/or money ("Property") to the Trust and execution of a Joinder Agreement by a Grantor. Upon approval by the Trustee, and delivery of Property that is acceptable to the Trustee, the following provisions apply:

a)    the Trust shall be irrevocable as to such Grantor and Beneficiary;
b)    the contributed Property shall not be refundable;
c)    the designation of the respective Beneficiary may not be revoked or changed; and,
d)    the Trust may not be terminated early and shall not be construed to contain a provision that would allow for early termination.

4.5     Certain Common Law Principles Inoperable.  The common law principles of the Rule in Shelly's Case and the Doctrine of Worthier Title shall not operate to make any Trust sub-account revocable, which would be contrary to the clear intent of the Trust and contrary to the intent as expressed by each Grantor to establish an irrevocable trust, the same common law principles having been specifically abolished by Florida Statute, Sections 689.17 and 689.175, respectively. Moreover, no Trust sub-account shall be deemed revocable under the general trust principle that a trust is revocable where a grantor is also the sole beneficiary because it can be revoked unilaterally without the joinder of residual beneficiaries. While all Trust sub-accounts shall be established for the sole

THE NATIONAL POOLED TRUST
Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)
Copyright, 2016. The Center for Special Needs Trust Administration, Inc.

benefit of the Beneficiaries as required within the meaning of the Social Security Policy Operations Manual System (POMS) SI 01120.201F. and SI 01120.201B.1.e., no Grantor/Beneficiary shall be the sole beneficiary such that a Trust sub-account can be terminated unilaterally due to the interest that 42 U.S.C. §1396p(d)(4)(C)(iv) creates in the Trust and in the State(s). The Trustee and all States where a Beneficiary has received government assistance therefore have standing to challenge any attempt by a Grantor, a Beneficiary, or any other party to revoke an irrevocable Joinder Agreement, and no action to revoke a Trust sub-account unilaterally can be successful because it would require notice to the State(s) and to the Trustee as well as joining them to the action.

4.6    Residual Beneficiary Designated to Ensure Irrevocability.    Each Grantor who executes, or has previously executed, a Joinder Agreement hereby designates The Center for Special Needs Trust Administration, Inc. as a residual beneficiary to receive the sum of Twenty-Five Dollars ($25.00) upon the death of the Beneficiary for whom each such Trust sub-account is established or has been established. While this disposition is and shall be the clear and unambiguous expression of each existing and prospective Grantor's wishes, the Trustee and each Grantor further acknowledge and direct that such disposition is subject to, and does not alter in any respect, the retention and reimbursement provisions found in each Joinder Agreement and also found in Article 6 below of this Declaration of Trust. In designating the residual beneficiary hereunder, each Grantor is also acting to prevent an agency regulation from nullifying a Federal statute, and to avoid the unreasonable and detrimental result of applying two conflicting policies that require a trust to have a residual beneficiary while simultaneously requiring a sole beneficiary. As the Social Security Administration seeks to explain through SI 01120.200D.3. of the POMS, "[S]ome States follow the general principle of trust law that if a grantor is also the sole beneficiary of a trust, the trust is revocable regardless of language in the trust to the contrary." In applying this POMS Section to Pooled Trusts, the Social Security Administration has determined certain Pooled Trusts to be revocable despite the fact that Section 1917(d)(4)(C) of the Social Security Act; 42 U.S.C. §1396p(d)(4)(C); all relevant sections of the POMS; and, all relevant sections of all State Medicaid regulations require individuals who establish Pooled Trust sub-accounts to be the sole beneficiaries of their respective Trust sub-accounts and also to fund their respective Trust sub-accounts with their assets alone.

## ARTICLE 5
### DISTRIBUTIONS DURING THE BENEFICIARY'S LIFETIME

Subject to the Trustee's sole and absolute discretion, distributions from any of the individual Trust sub-accounts shall be made in accord with the provisions of this Article 5 during the lifetime of a Beneficiary.

5.1    Distributions Within Discretion of Trustee.    The Trustee shall pay or apply for the supplemental care or supplemental needs of each Beneficiary, such amounts from the principal or income, or both, of the Trust sub-account maintained for such Beneficiary, up to the whole thereof, as the Trustee, in its sole and absolute discretion, may from time to time deem necessary or advisable. The Trustee shall possess and exercise the authority to allocate all distributions between principal and income as it determines in its sole and absolute discretion. Any income not distributed from a Trust sub-account shall be added to the principal of that Trust sub-account.

5.2    Distributions Not to Replace Assistance.    Distributions from this Trust should not

be made to, or for the benefit of, a Beneficiary if the effect of such distribution would be to replace, or to disqualify a Beneficiary from receiving, government assistance. The Trust corpus and income is specifically not available to any Beneficiary except to the extent of distributions made by the Trustee for the benefit of a Beneficiary. No distributions should be made by the Trustee to, or for the benefit of, a Beneficiary in excess of resource and income limitations of any public benefit program to which the Beneficiary is entitled. The Trustee may consider the future needs of a Beneficiary when making distributions or when considering requests for distributions but shall not be required to do so. The Trustee should refuse any request for payments from this Trust for services that any public or private agency has the obligation to provide to Beneficiaries who otherwise qualify for such assistance.

5.3     **Non-exclusive Examples of Appropriate Distributions.**   The following examples illustrate the types of non-support payments that are within the discretion of the Trustee to make from this Trust for the sole benefit of a Beneficiary. Such examples include:

a)     payments to a third party that result in the receipt of goods or services by the Beneficiary;

b)     payment of third party travel expenses which are necessary in order for the Beneficiary to obtain medical treatment; and

c)     payment of third party travel expenses to visit a Beneficiary who resides in an institution, nursing home, or other long-term care facility, such as group homes and assisted living facilities, or other supported living arrangements in which a non-family member or entity is being paid to provide or oversee the living arrangements of the Beneficiary. The travel must be for the purpose of ensuring the safety and/or medical well-being of the Beneficiary.

5.4     **Acquisition and Maintenance of Real Estate.**   The Trustee is authorized, in its sole and absolute discretion, to acquire and maintain an interest in residential real estate which is suitable for occupancy by a Beneficiary. In exercising its authority hereunder, the Trustee may title any such residential real estate as the Trustee determines, in its sole and absolute discretion, to be in the best interest and sole benefit of such Beneficiary provided that it meet the Trust's sole benefit requirement and thereby preserves the Beneficiary's eligibility for public assistance. In the event the Trust comes to own any interest in such realty, the Trustee may permit such Beneficiary to occupy or use such property without charge in such manner as, in the opinion of the Trustee, best serves the Beneficiary's special needs, without the necessity of turning such property into cash or gaining an income therefrom.

5.5     **Maintenance Costs and Rent.**   The Trustee is further authorized, in its sole and absolute discretion, and without regard to how any such residential real estate may be specifically titled, to pay out of the income or principal of the Trust any taxes, insurance, and maintenance expenses needed to keep the residential or replacement property in suitable repair, or any portion thereof. The Trustee may also collect rent from other occupants of the property, but shall not be obligated to do so. In exercising the powers herein, the Trustee shall continue to fulfill its primary duty of taking into consideration the intent and purpose of this Trust and the duty to administer the

THE NATIONAL POOLED TRUST
*Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)*
Copyright, 2016. The Center for Special Needs Trust Administration, Inc.

Trust for the sole benefit of the Beneficiary. All of these powers may be exercised for the benefit of such Beneficiary, even if the Beneficiary is residing with a family member or members.

5.6   <u>Limitation on Authority.</u> Without regard to the provisions of paragraphs 5.4 and 5.5 above, the Trustee shall be required to title any interest in residential real estate in the name of a Beneficiary's Trust sub-account whenever and wherever such titling is required pursuant to the administrative rules and regulations of the State where such a Beneficiary resides. Likewise, the Trustee shall be required to collect pro-rata contributions of rent and other associated costs from any other occupants of the property whenever and wherever such pro-rata contributions are required by the administrative rules and regulation of the State where such a Beneficiary resides.

5.7   <u>Trustee's Duty Regarding Government Assistance Programs.</u> In providing for the Beneficiary's special needs, and/or in making determinations regarding disbursements and/or distributions for the benefit of the Beneficiary's special needs, the Trustee shall always consider the government assistance for which the Beneficiary is currently eligible, or for which the Beneficiary may be attempting to become currently eligible, and the Trustee shall make no disbursements and/or distributions that would cause the Beneficiary to be or become ineligible for such government assistance. Distributions that the Trustee may or may not have made in the past because of less restrictive government assistance programs, more restrictive government assistance programs, or government assistance programs that the Beneficiary did not apply for, qualify for, and/or receive, shall not serve to provide a pattern of any sort that establishes a duty or discretion in the Trustee to continue making such distributions, to continue refusing such distributions, or to make or to refuse such distributions in the future as the individual case may be. The Trustee shall have no discretion in this regard, and it shall be an absolute duty of the Trustee to follow the directions herein.

## ARTICLE 6
### DISTRIBUTIONS AT A BENEFICIARY'S DEATH

6.1   <u>No Distributions.</u> Upon the death of a Beneficiary, any amounts remaining in that Beneficiary's Trust sub-account shall be administered according to the provisions of this Article 6 so as to conform with all of the requirements of 42 U.S.C. §1396p and/or related statutes, including state statutes and regulations that are consistent with the provisions and purposes of the Omnibus Budget Reconciliation Act of 1993, amending 42 U.S.C. § 1396p and pertaining to reimbursement to the States for medical assistance provided under a State plan on behalf of the individual Beneficiary.

6.2   <u>Remaining Trust Property.</u> To the extent that any such remaining property is not retained by the Trust consistent with 42 U.S.C. §1396p(d)(4)(C), such property shall be distributed to the State where the Beneficiary resided at the time of death and also to all such other States where the Beneficiary received medical assistance under a State plan up to the full amount provided by each of the States. At the time such a distribution may be made, the Trustee shall reimburse each State based on its pro-rata share of the total amount of medical assistance paid by all of the States on behalf of the Beneficiary if the remaining Trust estate is insufficient to fully reimburse all of the States. This provision is intended to meet the requirements of 42 U.S.C. § 1396p(d)(4)(C), as amended by OBRA '93, and all related rules, regulations, and POMS. As such, the State and/or States where the Beneficiary received medical assistance under a State plan shall be the first payee(s)

THE NATIONAL POOLED TRUST
*Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)*
Copyright, 2016. The Center for Special Needs Trust Administration, Inc.

hereunder and shall have priority over payment of all other debts and administrative expenses with no limitation as to any State(s) or any particular period of time.

6.3   Specifically Prohibited Expenses.   The Trustee shall not: 1) pay taxes due from the estate of a Beneficiary other than those arising from inclusion of the Trust in the estate; 2) pay inheritance taxes due for residual beneficiaries; 3) make payment of debts owed to third parties; 4) pay for funeral expenses; and/or, 5) make any payments to residual beneficiaries.

## ARTICLE 7
### ADMINISTRATIVE PROVISIONS RELATING TO TRUST SUB-ACCOUNTS

7.1   Establishment and Maintenance of Trust Sub-accounts.   A separate Trust sub-account shall be established and maintained for the sole benefit of each Beneficiary, but the Trust shall pool these sub-accounts for investment and management purposes.   The Trustee, or the Trustee's authorized agents, shall maintain records for each Trust sub-account in the name of, and showing the contributed property for, each Beneficiary.

7.2   Taxes.   In establishing the Trust, it is the Trustee's intent that each Beneficiary's Trust sub-account preserve the option of being treated as a Grantor Trust for purposes of determining the Beneficiaries' tax liability. For the sole purpose of determining such tax liability and having each of the Beneficiaries' Trust sub-accounts treated as a Grantor Trust, the Trustee may apply trust income to the payment of premiums on policies of insurance on the life of each Grantor, from the Trust sub-account of each respective Beneficiary, without the approval or consent of any adverse party within the meaning of Section 672(a) of the Internal Revenue Code.   For purposes of this paragraph 7.2, "Grantor" means the Beneficiary whose funds are used to fund and establish an individual Trust sub-account. Moreover, "trust corpus" shall have the same meaning as "Trust sub-account" used elsewhere throughout this Declaration of Trust.   Last, nothing in this paragraph 7.2 shall in any way affect or modify the intent and/or purpose of the Trust or any of the provisions found in this Declaration of Trust.

7.3   Reports to the Beneficiaries.   The Trustee shall report at least annually to each Beneficiary or to such Beneficiary's legal representative, and such report shall be a reasonably understandable accounting that begins from the date of the last accounting, or from the date on which the Trustee became accountable in the case of a first accounting, and which otherwise meets all other statutory reporting requirements for trustees both as to substance and as to standard fiduciary form. All reports and/or accountings provided hereunder shall be conclusively deemed to be accepted by the Beneficiary or the Beneficiary's representative if the Trustee does not receive an objection within sixty (60) days of having provided the report and/or accounting.   For purposes of calculating sixty (60) days hereunder, the date of having provided the report and/or accounting shall be the date such report is mailed by the Trustee to the Beneficiary or to the Beneficiary's representative.   To be effective, any such objection to the Trustee's report shall be mailed to the Trustee's normal place of business by certified mail, return receipt requested.

7.4   Pre-Need Services.   The Trustee is encouraged and specifically authorized, but not required, to make distributions for irrevocable burial and funeral services prior to the death of a

THE NATIONAL POOLED TRUST
*Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)*
Copyright, 2016.  The Center for Special Needs Trust Administration, Inc.

Beneficiary. Because such services are highly personal and cannot be easily planned without the request or cooperation of a Beneficiary or family member, the Trustee is further authorized within its discretion to take whatever measures it deems reasonable and prudent to ensure that such services are provided to Beneficiaries in the event that a Beneficiary or representative fails to cooperate. Provided, however, that any such measures taken by the Trustee shall be irrevocable and shall also be for the sole benefit of such a Beneficiary. As strictly prohibited by 6.3 above, the Trustee shall not make any distribution for burial or funeral services after the death of a Beneficiary.

7.5     Periodic Payments.  In the event that any Trust sub-account is named as the payee of irrevocable periodic payments from a qualified assignment pursuant to Section 130 of the Internal Revenue Code, the Trustee shall have no duty to seek out or otherwise obtain any remaining guaranteed payments upon the Beneficiary's death if the parties to the qualified assignment have named residual beneficiaries other than the Trust.

### ARTICLE 8
### TRUSTEE PROVISIONS

8.1     Trustee Powers.  The Trustee shall have the powers enumerated under this Article in addition to all other powers granted to Trustees by law. Notwithstanding any contrary provision herein, the Trustee shall not exercise any power in a manner that is inconsistent with a Beneficiary's right to the beneficial enjoyment of the Trust property in accordance with general principles relating to the law of trusts or that is inconsistent with the purpose and intent of this Trust and the individual Trust sub-accounts.

8.2     Trustee May Seek Advice.  The Trustee may, in performing its duties under this Trust, seek the advice and assistance of any person or entity it deems to be appropriate, including, but not limited to, any federal, state, and/or local agencies that are established to assist people with disabilities. Associated costs, if any, shall be a proper expense of the Trust and may be apportioned on a pro rata basis to all Trust sub-accounts or charged only against the Trust sub-account about which the Trustee seeks such advice or assistance.

8.3     Designation of Co-Trustee.  Specifically subject to the limitations and restrictions of only selecting from among 501(c)(3) non-profit associations as more fully described in paragraph 2.2 above, the Trustee may designate a Co-Trustee, or Co-Trustees, as it may deem, in its sole and absolute discretion, to be necessary or advisable as to any matter and/or matters.

8.4     Appointment and Delegation.   The Trustee may engage, appoint, retain, and pay agents, advocates, trust protectors, money managers, and/or advisors as it determines in its sole and absolute discretion to be necessary for the proper discharge of its duties hereunder without liability for the acts of any such persons and/or entities, provided such persons and/or entities are selected and retained with reasonable care. Provided, however, that in employing any persons or for-profit entities as described herein, the Trustee shall maintain ultimate managerial control over the pooled trust at all times, and such persons and for-profit entities shall always be and remain subordinate to the Trustee, which is a 501(c)(3) non-profit Trustee granted tax exempt status by the Internal Revenue Service as required by Section 1917(d)(4)(C) of the Social Security Act and 42 U.S.C. §1396p(d)(4)(C) and as further described in SI 0120.225 of the POMS.

THE NATIONAL POOLED TRUST
*Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)*
Copyright, 2016.  The Center for Special Needs Trust Administration, Inc.

8.5     Trustee Identification of Programs.   The Trustee may, but is not required, to assist in identifying private or governmental programs that may be of legal, social, financial, developmental, or other assistance to Beneficiaries, or to create programs when such programs do not exist. In no event, however, shall the Trustee be liable in any way to any Beneficiary for failure to identify programs or resources that may be available to such Beneficiary or to create programs when such programs do not exist.

8.6     Scope of Trustee's Power.   Except as may be otherwise provided in this Declaration, and for so long as the Trustee is prudent in administering the Trust, the Trustee may serve without bond and shall exercise all powers under any and all Federal and State laws that may exist and be applicable to trusts, in effect on or after the execution of Joinder Agreements by the Grantors. Should bond be necessary for any reason whatsoever, such bond shall be a proper expense of the Trust or the Trust sub-account requiring such bond.

8.7     Trustee's Discretion to Accept Beneficiaries.   If the Social Security Administration or any authorized government agency has not made a determination that the Beneficiary is a person with a disability, the Trustee is authorized to accept such Beneficiary within its discretion upon its reasonable and informal determination that the Beneficiary is a person with a disability as defined in 42 U.S.C. § 1382c (a)(3).

8.8     Trustee to Receive Full Consideration for Trust Assets.   No authority described in this Declaration, or available to trustees pursuant to applicable law, shall be construed to enable the Trustee to purchase, exchange, or otherwise deal with or dispose of the assets of any Trust sub-account for less than an adequate or full consideration in money or money's worth, or to enable any person to borrow the assets of any Trust sub-account, directly or indirectly, without adequate interest or security.

8.9     Trustee Compensation.   The Trustee shall be entitled to receive annual compensation for its services hereunder in accordance with its published fee schedule in effect when the services are performed. All such compensation shall be charged directly to each Trust sub-account, recorded as a disbursement from the Trust sub-account, and reflected on the annual report provided to the Beneficiary. Costs and expenses for establishing, maintaining, administering, and/or defending Trust sub-accounts shall be proper charges and shall not be paid from, or apportioned to, Trustee compensation.

8.10     Trustee Resignation; Successor Trustees.   The Trustee may resign upon written notice to the Beneficiaries, or representatives, at the time of the Trustee's resignation. Upon any such resignation, the Trustee shall comply with the requirements of paragraph 2.2 above by designating another 501(c)(3) non-profit association granted tax exempt status by the Internal Revenue Service as successor Trustee, which shall assume its duties under this Declaration without any liability for the acts or omissions of any predecessor Trustee. The provisions of this paragraph 8.10 shall also control if the Trustee ceases to exist, is dissolved, or can no longer serve as Trustee for any other reason. In conjunction with the actions described in this paragraph 8.10, a final accounting shall be made by the Trustee to the Beneficiaries, or representatives, if any. However, in the event of a name change and/or a merger with another 501(c)(3) non-profit corporation, such successor Trustee shall immediately and automatically assume its duties hereunder without the need

THE NATIONAL POOLED TRUST
*Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)*
Copyright, 2016. The Center for Special Needs Trust Administration, Inc.

or obligation to provide notice or an accounting.

    8.11   <u>Indemnification of Trustee</u>.  The Trustee and each of its Co-trustees, if any, agents and employees, including the heirs, successors, assigns, and personal representatives of its agents, are hereby indemnified by the Trust and the Trust property against all claims, liabilities, fines, or penalties, and against all costs and expenses, including attorney's fees and disbursements and the cost of reasonable settlements, imposed upon, asserted against or reasonably incurred thereby in connection with or arising out of any claim, demand, action, suit, or proceeding in which he, she, or it may be involved by reason of being or having been a Trustee or affiliated with a Trustee as set forth above, whether or not he, she, or it shall have continued to serve as such at the time of incurring such claims, liabilities, fines, penalties, costs, or expenses or at the time of being subjected to the same.  However, the Trustee and each of its Co-trustees, if any, agents and employees, including the heirs, successors, assigns, and personal representatives of its agents, shall not be indemnified with respect to matters as to which he, she, or it shall be finally determined to have been guilty of willful misconduct in the performance of any duty by a court of competent jurisdiction.  This right of indemnification shall not be exclusive of, or prejudicial to, other rights to which the Trustee and each of its Co-trustees, if any, agents and employees, including the heirs, successors, assigns, and personal representatives of its agents, may be entitled as a matter of law or otherwise.

## ARTICLE 9
### GENERAL PROVISIONS

    9.1   <u>No Requirement to Furnish Bond</u>.  Neither the Trustee, nor any Co-trustees, if any, shall be required to furnish bond for the faithful performance of any duties created under this Declaration.  If bond is required by any law or court of competent jurisdiction, no surety shall be required on such bond, and such bond shall be a proper expense of the Trust or the Trust sub-account for which bond is required as the case may be.

    9.2   <u>Trust to Be Free From Court Supervision</u>.  The Trust established under this Declaration shall be administered free from the active supervision of any court.  However, any proceedings to seek judicial instructions or a judicial determination may be initiated by the Trustee in any court having jurisdiction of matters relating to the construction and administration of trusts with such venue to be determined by the Trustee within its sole discretion.

    9.3   <u>Governing Law</u>.  This Trust shall be governed exclusively by, and interpreted exclusively in accordance with, the laws of the United States and the State of Florida.

    9.4   <u>Governing Medicaid Rules</u>.  Notwithstanding paragraph 9.3 above, each Trust sub-account shall also be governed by the particular State Medicaid rules of the State where a Beneficiary resides without regard to whether such rules are implemented by statute, administrative code, or agency manuals.  Such governing Medicaid rules shall apply immediately and automatically by virtue of a Beneficiary moving to, or living in, a particular State.  Pursuant to Article 5 above, the Trustee shall modify the administration of the Trust sub-account accordingly as may be necessary to comply with such governing Medicaid rules.  Likewise, any particular language required to be included in the Trust sub-account shall be automatically incorporated herein with no requirement for the Trustee to take any formal or informal action.  The Trustee may execute and incorporate a

THE NATIONAL POOLED TRUST
*Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)*
Copyright, 2016.  The Center for Special Needs Trust Administration, Inc.

statement formally acknowledging that such a Trust sub-account is governed by the Medicaid rules of such a Beneficiary's State of residence, but such a formal acknowledgment is not a necessary precondition to the automatic applicability of such rules.  However, to the extent that any Federal agency or State Medicaid agency requires some particular language to be included in the Trust sub-account agreement, the Trustee shall execute a reformation or confirming amendment demonstrating that such language has been incorporated into the Beneficiary's Joinder Agreement at the time of execution and that such language controls.

9.5   Procedural Provisions.   Any conforming and/or effectuating reformations or amendments that might be made pursuant to paragraphs 1.5 or 9.4 above, may be made unilaterally by the Trustee without notice to any party and/or Beneficiary and may be made effective retroactively or prospectively as the Trustee deems most appropriate in its sole discretion.  As the Trustee elects in its discretion to be the most timely, effective, and/or practical, any reformations or amendments hereunder may be effectuated by restating this Trust directly, by an additional addendum or reformation thereto, or through the terms of the individual Joinder Agreement(s) as used in the particular State(s) in question without effecting the operation of the Trust in any other State(s).

9.6   Rules of Construction.   By executing a Joinder Agreement and establishing a Trust sub-account, it shall be the intent of the Trustee and each Grantor to meet and comply fully with 42 U.S.C. §1396p(d)(4)(C) and all such enabling legislation, regulations, and rules such as, but not limited to POMS SI 01120.201; POMS SI 01120.201; and, all related Medicaid rules and regulations. As such, this Trust and the Joinder Agreement shall be construed as broadly as possible to meet this purpose and objective.  In the event that any Joinder Agreement and this Master Trust are ever deemed to contain ambiguities or conflicts that would otherwise defeat its purpose or open it to interpretations that would render it non-compliant and make a Beneficiary ineligible for government assistance, the documents shall be read together and any such provisions of either document that clarify or resolve such ambiguities or conflicts in favor of a Beneficiary shall be given priority and effect so as to achieve compliance and eligibility for the Beneficiary.  In the event that it becomes impossible to resolve any ambiguities or conflicts by reading the Joinder Agreement and the Trust together and construing them broadly, then the terms of this Master Trust shall control and be given precedence. In this regard, the Master Trust shall control and be given precedence over all existing Joinder Agreements executed before the date of this reformed and restated Master Trust as well as all Joinder Agreements executed after the date of this reformed and restated Master Trust.

9.7   Severability and Section Headings.   Any provision of this Declaration that is adjudged invalid or unenforceable under the laws of any place where the terms of the Declaration are to be performed, or are sought to be enforced, shall be deemed inoperative without invalidating such provision elsewhere or any of the other provisions of this Declaration or without invalidating such provision in any other place where the terms of the Declaration are to be performed.  Section headings are for purposes of convenience only and shall have no bearing on the interpretation of any provision of this Declaration of Trust.

9.8   Benefits Savings Clause.   Any provision of this Declaration, the Trust created hereunder, or any Joinder Agreement that may disqualify any Beneficiary for government assistance, or reduce such assistance, shall be automatically, ab initio, reformed, amended, limited or void, as required to avoid any such disqualification.  This provision is included herein, despite the contrary

THE NATIONAL POOLED TRUST
*Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)*
Copyright, 2016.  The Center for Special Needs Trust Administration, Inc.

policy expressed by the Social Security Administration in SI 01120.227, so that the Trust provides a firm basis for bringing any matter before a State Court as may be advisable or necessary for a reformation.

IN WITNESS WHEREOF, the undersigned hereby subscribes to the above Reformed and Restated Declaration of Trust on the date and year first written above.

WITNESSES:

_Karen Martin_
Karen Martin
Printed Name

_Kathy DiPerkey_
Kathy L. Perkey
Printed Name

THE CENTER FOR SPECIAL NEEDS TRUST
ADMINISTRATION, INC.

By: _____

Todd J. Belisle
Printed Name

Its:       President


STATE OF FLORIDA                    ))
COUNTY OF PINELLAS                  ))

The foregoing Declaration was acknowledged before me this 5th day of April, 2016, by Todd J. Belisle, who is:

[X] personally known to me; or,

[ ] who has produced _____ as identification.

VICKI L. DUFFEY
MY COMMISSION # FF 131045
EXPIRES: August 12, 2018
Bonded Thru Notary Public Underwriters

_____
Notary

THE NATIONAL POOLED TRUST
Established Pursuant to 42 U.S.C. §1396p(d)(4)(C)
Copyright, 2016. The Center for Special Needs Trust Administration, Inc.

Exhibit "B"
Grantor and Beneficiary Information

Please be as thorough as possible when completing this section.  This information is necessary for administering the Trust for the Beneficiary's best possible interest.

**Grantor Information**
(This is the person who will sign the Joinder Agreement)

Name:             Jennifer Lara Rehg

Address:          825 Hardy Drive

                  West Sacramento, CA 95605

Telephone:        (day) 916-430-2739         (evening) (Same)

Birth date:       05/25/19██

Social Security
Number:           █████3283

Relationship
to Beneficiary:   Mother

**Beneficiary Information**
(This is the person who will be a Beneficiary of the Pooled Trust)

Name:             ██████████

Address:          825 Hardy Drive

                  West Sacramento, CA 95605

Telephone:        (day) 916-430-2739         (evening) Same

Birth date:       ██████

Social Security
Number:           ████-5950

Medicaid Card
Number:           92385610F22129

*If the Beneficiary is a Minor, Please Provide:*

Mother's Name:    Jennifer Lara Rehg        SS# ████-3283

Father's Name:    Morgan Rehg               SS# ████-5294

*Exhibits to The Pooled Trust Joinder Agreement*
Copyright 2004.  The Center for Special Needs Trust Administration, Inc.

Does the Beneficiary have a legal representative? ✓ Yes.     No.   If yes, please provide the representative's name, address, telephone number, and relationship to the Beneficiary.

Name:        Carolyn Young

Address:     425 Falgate Road

             Sacramento, CA 95825

Telephone:   (day) 916-446-5555 _____ (evening) _____

Relationship:  Guardian Ad Litem

Please check the description that best describes the correct legal relationship:

___ Legal Guardian     ___ Representative Payee     ___ Durable Power of Attorney

Other (please explain) _____

What is the specific nature of the Beneficiary's disability? If the Beneficiary's condition has been medically diagnosed, what is that diagnosis?
Hypoxic-Ischemic Encephalopathy, Spastic Quadriplegia, Cerebral Palsy, Seizure Disorder.

What is the Beneficiary's current prognosis?
It is not anticipated that Beneficiary's condition will change significantly in the future.
(Please note the IEP dated Dec. 2016)

## Government Assistance

Please indicate all forms of government assistance that the beneficiary receives.

Social Security . . . . . . . . . . . . . . . Yes _____     No ✓     Not Sure _____

Supplemental
Security Income (SSI) . . . . . . . . . . . . . Yes _____     No _____     Not Sure ✓ *

*Application is pending due to Father's Income.

*Exhibits to The Pooled Trust Joinder Agreement*
Copyright 2004. The Center for Special Needs Trust Administration, Inc

Social Security Disability
Income (SSDI)  . . . . . . . . . . . . . . . . . . . . .  Yes _____      No  ✓      Not Sure _____

Institutional Care Program
(Long Term Nursing Home Care)  . . . . . . . . . .  Yes _____      No  ✓      Not Sure _____

Medically Needy Program  . . . . . . . . . . . .  Yes _____      No  ✓      Not Sure _____

MEDS-AD  . . . . . . . . . . . . . . . . . . . . . . .  Yes _____      No  ✓      Not Sure _____

Medi-Kids  . . . . . . . . . . . . . . . . . . . . . . .  Yes _____      No  ✓      Not Sure _____

Protected Medicaid  . . . . . . . . . . . . . . . . .  Yes _____      No _____      Not Sure  ✓ **

Home or Community                                   **Pending application for Indefinite Waiver
Based Medicaid Waiver Programs  . . . . .  Yes _____      No _____      Not Sure  ✓ **

Optional State Supplementation (OSS)  . .  Yes _____      No  ✓      Not Sure _____

Home Care for the
Elderly and Disabled (HCE/DA)  . . . . . .  Yes  ✓      No _____      Not Sure _____

Food Stamps  . . . . . . . . . . . . . . . . . . . . . . .  Yes _____      No  ✓      Not Sure _____


List any other government assistance that the Beneficiary receives or has applied for:
~~E____~~ had Medi-Cal, Indefinite Waiver pending review. ~~E____~~ receives 8 hours/wk paid
care though In-Home Supportive Services, Alta Regional Services, California Childens
Services, ~~E____~~ recieved SSI, but is on a "non-pay" status for review of family income.
_____
_____

List all forms of government assistance which have been denied or discontinued to the
Beneficiary, including the approximate dates:
_____
_____
_____
_____

## Insurance Information

If the Beneficiary is covered under any policy of health care insurance, please provide the
insurer's name, address, and the policy number.

*Exhibits to The Pooled Trust Joinder Agreement*
Copyright 2004, The Center for Special Needs Trust Administration, Inc

Insurer:     <u>Anthem Blue Cross PPO</u>

Address:     _____

               _____

Policy      <u>BQP694M79965</u>
Number:

If the Beneficiary is covered under any prepaid funeral or burial insurance, please provide the insurer's name, address, and the policy number.

Insurer:     <u>NA</u>

Address:     _____

               _____

Policy
Number:     _____

*Exhibits to The Pooled Trust Joinder Agreement*
Copyright 2004. The Center for Special Needs Trust Administration, Inc

Exhibit "C"

### Desires of Grantor for Use of Distributions From Trust
### Sub-Account During Life of Beneficiary

Please be as thorough as possible when completing this section. The information you provide can be useful to the Trustee when reviewing requests for distributions.

A) Please explain how you would like to see assets in the Beneficiary's Pooled Trust account used to improve the Beneficiary's quality of life. You may provide this explanation in any way that makes sense given your particular circumstances.

Sky Pediatrics Intensive Physical Therapy Program. Home Therapies: art, music, physical therapy,

occupational therapy, vision & speech therapy.

Assistive Technologies such as switches that "speak" for him.

Positioning mats / equipment so he can side lie, tummy time & practice sitting.

Adaptive Bicycle, Swing, Dynamic Stander, Aquatherapy, Equestrian Therapy, Sensory Wall Structure,

Switch Activated: Adaptive Toys, Musical Instruments.

All Terrain Beach Wheelchair, Gait Trainer.

Pre-Paid Funeral and Burial.

B) If possible, please provide the name and address of anyone who can be consulted if reassessing the Beneficiary's supplemental needs becomes useful or necessary in the future. Examples might include family members, a care manager, or even a care management company.

Jennifer Lara Rehg (Mother): 625 Hardy Dr., W. Sacramento, CA 95605 (916)-430-2739

*Exhibits to The Pooled Trust Joinder Agreement*
Copyright 2004. The Center for Special Needs Trust Administration, Inc

Exhibit "D"

Proof of Grantor's Status to Establish Trust on Behalf of Beneficiary

Under current law, only the beneficiary's parents, grandparents, legal guardian, the beneficiary himself or herself, or someone acting at the direction of a court may establish the Trust on behalf of the beneficiary. If you are anyone other than the beneficiary, then please include documents that verify that you fall within one of these permissible categories.

**ALL GRANTORS SHOULD PROVIDE A PHOTOCOPY OF THEIR DRIVER'S LICENSE**
**OR**
**OTHER PHOTO IDENTIFICATION**

In addition to the Grantor's photo I.D., the list below illustrates the types of documents that should be submitted to establish the Grantor's relationship to the Beneficiary and/or the status to contribute to the Trust.

1. Beneficiary as the Grantor.        Your photo I.D. will be enough.

2. Parent(s) as Grantors.            Include a copy of your son or daughter's birth certificate.

3. Grandparent(s) as Grantors.       Include a copy of your son or daughter's birth certificate and a copy of your grandchild's birth certificate.

4. Legal Guardian as Grantor.        Include a copy of your Letters of Guardianship *and a copy of the Court Order* authorizing you to sign the Joinder Agreement.

5. Court as Grantor.                 If you are acting at the direction of a Court, *include a copy of the Court Order* that directs you to execute the Joinder Agreement.

The documents listed above are examples only and are not intended to be exhaustive or all inclusive. Any document that establishes the Grantor's relationship to the Beneficiary, and the status to establish the Trust on behalf of the Beneficiary, will be sufficient. Please note, however, that the documents provided must clearly and unequivocally establish the Grantor's status.

*Exhibits to The Pooled Trust Joinder Agreement*
Copyright 2004. The Center for Special Needs Trust Administration, Inc

Exhibit "E"

Disclaimer Regarding Legal Advice

_____

BY MY SIGNATURE below, I freely and openly acknowledge the following.

1)    Neither the Non-Profit Trustee, the Co-trustee, if any, nor any of their employees and/or agents, including but not limited to any and all law firms engaged by the Non-Profit Trustee or Co-trustee, if any, have offered or given me any legal advice regarding: a) the Joinder Agreement and/or the Trust; b) the suitability of the Joinder Agreement and/or the Trust as it may apply to my particular circumstances; and, c) the suitability of the Joinder Agreement and/or the Trust as it may apply to the particular circumstances of the Beneficiary.

2)    I have been encouraged to, and have had a full, complete, and fair opportunity to seek independent legal counsel.

Dated the **22** day of **February**, 2017

Grantor

*Exhibits to The Pooled Trust Joinder Agreement*
Copyright 2004.  The Center for Special Needs Trust Administration, Inc